UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
:
:
ISAAC JAKOBOVITS, as Trustee of the LITE : 
TRUST I, : 17-cv-3527-ARR-RER
:
Plaintiff, : <u>NOT FOR PRINT OR</u>
: <u>ELECTRONIC PUBLICATION</u>
-against- :
: **OPINION & ORDER**
PHL VARIABLE INSURANCE COMPANY, :
:
Defendant. :
:
:
-------------------------------------------------------------------------- X

ROSS, United States District Judge:

  Plaintiff Isaac Jakobovits, as the trustee of the LITE Trust I (the purported owner of a number of life insurance policies),[1] brings this suit against defendant PHL Variable Insurance Company (the issuer of those policies). Plaintiff alleges that defendant is liable for breach of contract and fraud in the inducement for sending policy holders incorrect notices of default ("lapse notices"). Specifically, plaintiff alleges that the lapse notices told the policy holders that they needed to pay more to save their policies from termination than was actually required by the policy terms. In addition, plaintiff alleges that defendant is liable for breach of contract for improperly raising the cost of insurance ("COI") rate on twenty-two of the policies. Defendant has moved to dismiss the majority of the complaint. First, it argues that plaintiff lacks standing. Second, it argues that many of the claims are time barred. And third, it argues that plaintiff has failed to state a claim as to the allegedly incorrect lapse notices. For the reasons discussed below, defendant's motion is granted in part and denied in part.

---

[1] The sole beneficiary of LITE Trust I is LITE Group LLC. Compl. ¶ 8. Jakobovits is both the trustee of LITE Trust I and the sole member of LITE Group LLC. Id. I refer to both LITE Trust I and Jakobovits as "plaintiff" in this opinion.

1

## BACKGROUND

**A. Factual Background**

Beginning in 2006, defendant issued a number of Phoenix Accumulator Universal Life insurance policies. First Am. Compl. ¶ 1 ("Compl."). These were flexible premium universal life insurance policies, which provided both a death benefit and a cash value. Id. ¶ 13. They allowed the policy holder to choose on a month-to-month basis how much in premiums she wished to pay, provided there was enough to cover the insurer's monthly deductions. Id. ¶¶ 13-14, 16-17. The cash value increased as the policy earned interest and as the policy holder made payments, and decreased as defendant debited administrative and cost of insurance (COI) charges each month. Id. Any interest in the policies could be assigned by written notice. Id. ¶ 25. According to the policy terms, once notice had been provided to defendant, it bound defendant "as of the date of the assignment." Decl. of Jarrett E. Ganer in Supp. of Def.'s Mot. to Dismiss ("Ganer Decl."), ECF No. 29-2, Ex. A § 18, ("Exemplar Policy").

Fifty-three such policies are at issue here.[2] The policies were issued to irrevocable trusts for fifty-one unaffiliated individuals in 2007 and 2008. E.g., Compl. ¶ 32.[3] Over the course of the next six years, different entities obtained ownership rights to these policies. The rights to some policies, for example, were assigned to JMA Investors LLC Revocable Trust and then to plaintiff. E.g., id. ¶ 33. The rights to others were assigned to GSCF Loan Trust, then to JMA, and then to LITE. E.g.,

---

[2] Defendant claims that only fifty-two policies are at issue and states that plaintiff has dropped its claims on the fifty-third policy—Policy No. 97521613, one of the two policies purchased by Moshe-Haim Ostad. Mem. of Law in Supp. of Def.'s Mot. to Partially Dismiss Pl.'s Am. Compl. 1 n.1 ("Def.'s Mot."), ECF No. 29-1. Plaintiff does not refute that statement in its opposition and repeats that fifty-two policies are at issue. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Partially Dismiss Pl.'s Am. Compl. 8, ECF No. 29-3 ("Pl.'s Opp'n"). But there is no indication on the docket that plaintiff has dropped its claims relating to that policy, nor would that be consistent with the allegations in the complaint. Compl. ¶¶ 186-89. Without further information from the parties, I do not treat plaintiff's claims on this policy as having been dropped.

[3] Plaintiff does not allege purchase dates for the Cowman, Mason, Scordas and Sodikoff policies. Id. ¶¶ 74-77, 157-61, 224-31.

id. ¶ 37. Defendant was notified of seven of the assignments to plaintiff by 2014. Id. ¶¶ 45, 108, 141, 163, 184, 191, 200. For the remaining policies, defendant was not notified of the assignments to plaintiff until August 2017. Ganer Decl., Ex. B.

Between 2010 and 2014, the policy holders received lapse notices that listed an "amount due" and stated that this was the "minimum" amount the policy holder must pay to prevent termination. Id. ¶ 29.[4] According to plaintiff, the policy terms indicated that "if a policy were to enter a Grace Period, the policyholder would be entitled to keep it in force by paying a premium payment sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions." Id. ¶ 26. The Lapse Notices, however, allegedly demanded "an amount equal to at least *four* Monthly Deductions." Id. ¶ 28. Plaintiff alleges that defendant knew at the time it issued the policy that it would require four monthly deductions and that it made such a misrepresentation "[t]o induce each policyholder to purchase its respective policy." Id. ¶¶ 26, 28. "[E]ach policyholder relied on the truthfulness of [defendant's] representations regarding this key policy term to purchase its respective policy." Id. ¶ 28.

**B. Procedural Background**

Plaintiff's amended complaint, filed in August 2017, brings three claims—two for breach of contract and one for fraud in the inducement.[5] Plaintiff first alleges that defendant "materially breached each policy" and its "implied duty of good faith and fair dealing" when it sent inaccurate lapse notices and when it terminated the policies for failure to pay the inflated amounts. Id. ¶¶ 274-75. According to plaintiff, defendant's "breaches excused subsequent performance and/or induced or caused each policy holder not to pay the true amount necessary to keep each policy in force." Id.

---

[4] The complaint alleges generally that "to the extent PHL provided the policyholder notice of an amount due to keep that policy in force, it did so by sending a 'Notice to Prevent Lapse' that stated an 'amount due.'" Id. In addition, the complaint specifically alleges that notice was provided as to each policy—except the Ostad policies, for which there are no allegations as to whether lapse notices were provided. Id. ¶¶ 186-89.
[5] Plaintiff's original complaint was filed June 12, 2017. Compl. for Damages and Decl. Relief, ECF No. 1.

¶ 276. Plaintiff next alleges that defendant "materially breached" twenty-two of the policies and its "implied duty of good faith and fair dealing[] when it unfairly and discriminatorily raised the COI rate it used" for those policies (but did not raise the rate on other policies within the same class of insureds) and when it attempted to recoup prior losses by changing the rates. Id. ¶¶ 259, 280. Plaintiff states that, "[p]rior to [defendant's] material breaches, each policyholder had fully performed its material obligations under each policy." Id. ¶¶ 276, 280.

Finally, plaintiff alleges that defendant fraudulently induced the policy holders to purchase the policies by promising the policy holders that: (1) defendant would send accurate lapse notices and (2) policy holders would be able to keep their policies in force by covering three monthly deductions, rather than four. Id. ¶¶ 283-84. According to plaintiff, "[a]t the time [defendant] made these representations, [it] knew them to be false." Id. ¶ 284. In addition, "each policyholder relied on the truthfulness of [defendant's] representations regarding this material policy term." Id. ¶ 285. Ultimately, plaintiff alleges, defendant "cashed in on its false representations" when the policy holders failed to pay, "terminating each policy while retaining the millions of dollars in premiums already collected." Id. ¶ 286.

Defendant filed its partial motion to dismiss in January 2018, seeking to dismiss the bulk of plaintiff's claims on three separate grounds. Def.'s Mot.

First, defendant moves to dismiss plaintiff's claims as to the majority of the policies for lack of standing. Id. at 31. It argues that plaintiff failed to plead facts that would establish a complete chain of assignment from the original policy holders to plaintiff. Id. Moreover, it argues that plaintiff failed to provide defendant with the required notice of assignment before it filed suit. Id. And finally, it argues that plaintiff has failed to allege that the original policy holders assigned their right to pursue tort claims to plaintiff's predecessors in interest. Id. at 34. The result of this, defendant states, is that plaintiff did not have a right to enforce the policies at the time it brought suit. Id. at 31.

4

Second, defendant moves to dismiss a number of the claims as time barred. Specifically, defendant argues that all of the fraud in the inducement claims are time barred, because it has been more than two years since the alleged fraud should reasonably have been discovered. Id. at 25. And defendant argues that seventeen of the lapse-notice breach of contract claims are time barred, because plaintiff cannot avail itself of equitable tolling or equitable estoppel. Id. at 27.

Third, defendant moves to dismiss the lapse-notice breach of contract claims and the fraud in the inducement claims under Rule 12(b)(6). Id. at 9, 18. According to defendant, plaintiff has failed to allege that (1) it adequately performed its side of the bargain by paying enough in premiums to prevent termination, id. at 12; (2) defendant's purported breach was material, id. at 13; (3) defendant's purported breach caused plaintiff's damages, id. at 15. As to the fraud in the inducement claims, defendant states that they are duplicative of the contract claims and fail to satisfy Rule 9(b)'s particularity requirements in alleging reliance on the purported misrepresentations. Id. at 18-24.[6]

## DISCUSSION

For the reasons discussed below, defendant's motion to dismiss is granted in part and denied in part. Specifically, I deny defendant's motion to dismiss for lack of standing and for failure to state a claim and grant in part defendant's motion to dismiss some of the claims as time barred.

"[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which that court sits." Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 494-97 (1941)). I therefore must apply New York's choice-of-law rules to determine which state's (or states') laws to apply. Because

---

[6] Defendant states that it does not seek dismissal of the COI-rate breach of contract claims "[f]or the seven [p]olicies LITE provided notice of an assignment before filing this case." Id. at 1 n.2. But it does not explain why the COI-rate breach of contract claims should be dismissed as to any of the policies. I therefore decline to dismiss any of the COI claims.

5

different states' laws may apply to different claims, see Simon v. Philip Morris Inc., 124 F. Supp. 2d 46, 75-76 (E.D.N.Y. 2000), I perform this analysis on an issue-by-issue basis below.

## I. Plaintiff Has Standing.

Defendant argues that plaintiff lacks an ownership interest in most of the policies sufficient to give him standing to sue.[7] I conclude, however, that plaintiff has adequately alleged that he has standing.

A motion to dismiss for lack of standing is treated as a motion under Rule 12(b)(1). To survive such a motion, plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." Amidaz Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011). Article III standing requires "(1) 'injury in fact,' (2) a 'causal connection' between that injury and the complained-of conduct, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Strubel v. Comenity Bank, 842 F.3d 181, 187-88 (2d Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To demonstrate injury in fact, plaintiff must "have legal title to, or a proprietary interest in, the claim." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 108 (2d Cir. 2008). An entity that has acquired the ownership interest through a valid assignment has standing to sue. See Cortlandt St. Recovery Corp. v. Hellas Telecomms., 790 F.3d 411, 418 (2d Cir. 2015).

### A. Plaintiff's Failure to Provide Defendant with Notice of Policy Assignments Does Not Defeat His Standing.

Plaintiff's failure to notify defendant of the assignments does not negate his right to file suit as the policies' owner.

---

[7] Defendant does not dispute standing as to the breach of contract claims for what it terms the "LITE-Owned Policies"—seven policies plaintiff alleges it owned at the time of lapse. Def.'s Mot. at 6, 31. These are the Bartschi, Gillan, Laursen, Materdomini, Opp, Payne, and Pozer policies. Compl. ¶¶ 45-46, 108-09, 141, 163-64, 184, 191-92, 200-01. In addition, the Sodikoff policy is alleged to have been acquired by LITE between lapse and termination. Id. ¶¶ 228-31.

The policies require that defendant be notified when the rights to a policy are assigned. They state that a policy holder "may, by written notice, assign any interest in [its] policy without the consent of any person other than an irrevocable Beneficiary. The assignment . . . must be filed with [defendant] at [its] Main Administrative Office. When filed, it will bind [defendant] as to the date of the assignment." Exemplar Policy § 18. Defendant argues that plaintiff did not gain ownership of each of the policies until it notified defendant of the assignment. Def.'s Mot. 31. In other words, defendant contends that the transfers were ineffective until notice occurred. Id. at 32. Plaintiff would therefore lack standing as to each of the policies for which notice was given after the complaint was filed. Id. at 31.

Despite the policy language, plaintiff did not need to provide notice of the assignments for the transfers to be effective. Under New York law, a contractual restraint on assignment does not render an assignment unenforceable unless the anti-assignment provision uses "clear language"—the "plainest words"—to render the assignment void. Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell, 863 F. Supp. 135, 137 (S.D.N.Y. 1994) (quoting Allhusen v. Caristo Constr. Corp., 103 N.E.2d 891, 893 (N.Y. 1952)).[8] This strikes the balance between discouraging restraints on alienation and promoting freedom of contract. See Allhusen, 103 N.E.2d at 893. If the contract does not expressly state that assignments are void, then the assignment is valid—even if it contravenes a contractual provision limiting assignment. See Trussell, 863 F. Supp. at 137.

Defendant states that the assignment provision at issue here "does not preclude or void assignments." Def.'s Mot. 33. Instead, "[i]t simply imposes an obligation to notify [defendant] of an assignment before [defendant] is bound by" it. Id. In support, defendant cites a district court case that held that plaintiff lacked standing on substantially similar facts. Id. at 32-33; Jakobovits v. Allianz

---

[8] Where state law is relevant to my standing analysis, New York law applies. Mertz v. Mertz, 3 N.E.2d 597, 599 (N.Y. 1936) ("The law of the forum determines the jurisdiction of the courts."); 19A N.Y. Jur. 2d Conflict of Laws § 67 (2d ed.).

7

Life Ins. Co. of N. Am., No. 15-cv-9977, 2017 WL 3049538, at *4-5 (S.D.N.Y. July 18, 2017). The Allianz court held that the assignment clause at issue there (which also required notice to the issuer of the policy) was "not an anti-assignment provision at all." Id. at *4. It did not "purport to void any invalid assignments"—it merely rendered assignments ineffective if they did not conform to the notice requirement. Id. at *4-5. Allianz is unpersuasive, however. There is no meaningful difference between defendant's argument that the assignments are ineffective without notice and an argument that the assignments are void without notice. The latter argument is precluded by case law and so the former should be as well. The policies do not, in the "plainest words," make assignments without notice void and so the assignments are enforceable. Plaintiff therefore has an ownership interest in the policies, which is sufficient to confer standing.

Relatedly, defendant argues that plaintiff has not adequately pleaded facts that establish a complete chain of assignment. Def.'s Mot. 31-32. But this argument also fails. Specifically, defendant argues that plaintiff has failed to plead "which bundle of rights transferred from the original policyholder to each subsequent entity." Id. at 32. According to defendant, the complaint leaves open the possibility that the rights ultimately assigned to plaintiff are quite limited, because an assignor cannot assign away an interest it does not have. Id. (citing Septembertide Publ'g, B.V. v. Stein & Day, Inc., 884 F.2d 675, 681-82 (2d Cir. 1989)). But the complaint does allege—for almost every policy— that plaintiff was assigned "any and all rights to bring claims on any basis relating to or arising out of" each policy. E.g., Compl. ¶ 33.[9] Implicit in this statement is an allegation that an entity that had such

---

[9] The complaint does not use this language in its allegations about the Gillan, Katzen, Materdomini, Moser, Opp, Payne, Pozner, or Scordas policies. Id. ¶¶ 107, 162, 183, 190, 199. For most of these, the policy-specific allegations still indicate that ownership rights were transferred to plaintiff. For Gillan, Materdomini, Payne, and Pozner, it alleges that defendant recorded plaintiff's ownership of the policies. Id. ¶¶ 108, 163, 191, 200. For Opp, it alleges that defendant sent a lapse notice to plaintiff, implying that it had recorded plaintiff's ownership. Id. ¶ 184. For Katzen, it alleges that JMA owned the policy before it "assigned all of its rights, title, and interest in and to" plaintiff. Id. ¶ 128. For Moser and Scordas, however, the complaint makes no policy-specific allegations of ownership at all. Id. ¶¶ 176-78, 224-26. Despite this, plaintiff has standing as to those policies because the complaint alleges that plaintiff is the current owner of all of the policies. Id. ¶ 1.

8

rights assigned them to plaintiff. Furthermore, the complaint alleges that plaintiff "is the current owner of all rights, title, and interest in, to and each of these policies." Id. ¶ 1. At this stage, where I must take the complaint's factual allegations as true, plaintiff has sufficiently alleged a complete chain of assignment.

### B. Plaintiff's Failure to Expressly Allege the Assignment of Tort Claims Does Not Defeat His Standing.

For essentially the same reasons, I reject defendant's argument that plaintiff lacks standing as to the fraud in the inducement claims because the complaint does not specifically allege that plaintiff was assigned the right to pursue tort claims relating to the policies.

Under New York law, a contract must contain "some expressed intent or reference to tort causes of action, or some explicit language evidencing the parties' intent to transfer broad and unlimited rights and claims" to transfer tort rights. Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., 35 N.E.3d 481, 486 (N.Y. 2015). Defendant argues that because the complaint does not make specific allegations about the transfer of tort claims, plaintiff has not adequately alleged that it has the right to bring its fraud in the inducement claims. Def.'s Mot. 34-36. But as I have noted, the complaint does allege that plaintiff "is the current owner of all rights, title, and interest in, to and each of these policies." Compl. ¶ 1. "[A]ll rights" must be read to include tort claim rights. No more is necessary at this stage.

## II. Seventeen of the Lapse-Notice Breach of Contract Claims Are Time Barred, As Are Forty-Nine of the Fraud in the Inducement Claims.

### A. Choice of Law

To determine the appropriate statute of limitations, I must determine when and where each claim accrued and whether the entity to whom the claim accrued was a resident of New York. For most of the policies and most of the claims, I am unable to make this determination at this stage of the proceedings.

9

Procedural issues such as statutes of limitation are governed by New York law. Portfolio Recovery Assocs., LLC v. King, 927 N.E.2d 1059, 1061 (N.Y. 2010); Martin v. Julius Dierck Equip. Co., 374 N.E.2d 97, 99 (N.Y. 1978). This does not, however, necessarily result in the application of the New York statute of limitations. New York's "borrowing" statute—so called because it describes when a court must "borrow" another jurisdiction's statute of limitations—requires that "[w]hen a nonresident sues on a cause of action accruing outside New York," that cause of action must "be timely under the limitations periods of both New York and the jurisdiction where the cause of action accrued." King, 927 N.E.2d at 1061 (quoting Global Fin. Corp. v. Triarc Corp., 715 N.E.2d 482, 484 (N.Y. 1999)) (alteration in original). In other words, another state's statute of limitations will apply if (1) the cause of action accrued out of state in favor of a nonresident and (2) that state's statute of limitations is shorter than New York's.[10]

A cause of action accrues out of state when it accrues to an out-of-state resident. See King, 927 N.E.2d at 1061 (noting that a cause of action generally accrues where the injured person resides); Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc., No. 12-cv-4025, 2013 WL 6667601, at *5 (S.D.N.Y. Dec. 17, 2013). Because a cause of action accrues at the time of the injury, it accrues in favor of whoever owned the policy at that time. In New York, the time of the injury is, for contract claims, the time of the breach, and for fraud in the inducement claims, the time that performance was wrongfully induced. See Ely-Cruikshank Co. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993) (breach of contract); Carbon Capital Mgmt., LLC v. Am. Express Co., 932 N.Y.S.2d 488, 495 (App. Div. 2011) (fraud in the inducement). The breach of contract claims therefore accrued to the entities that owned each policy at the time of the allegedly false lapse notices,

---

[10] The borrowing statute states that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply." N.Y. C.P.L.R. § 202.

10

while the fraud in the inducement claims accrued to the original policy holders. In sum, to determine the appropriate statute of limitations for the contract claims, I must know which entity owned the policy at the time of the lapse notice and where that entity resided. And to determine the appropriate statute of limitations for the fraud in the inducement claims, I must know where the original purchasers of the policies resided. Of course, if a claim fails under New York's statute of limitations, it is untimely even if another, shorter statute of limitations technically applies, as the borrowing statute never requires the court to apply a statute of limitations longer than New York's.

### B. Breach of Contract Claims

Seventeen of plaintiff's lapse-notice breach of contract claims are time barred under New York law. Breach of contract claims must be brought within six years of the breach itself, N.Y. C.P.L.R. § 213(2), regardless of when plaintiff became aware of the injury, ACE Secs. Corp. v. DB Structured Prods., Inc., 36 N.E.3d 623, 628 (N.Y. 2015). Here, the alleged breach occurred at the time of the incorrect lapse notices. Defendant argues that—as alleged—seventeen of these breaches occurred before June 12, 2011 (six years before the complaint).[11] Nine other policies also received allegedly incorrect lapse notices before June 12, 2011.[12] But because defendant does not argue that the lapse-notice breach claims are time barred as to these policies, I decline to dismiss them as untimely at this time.

Plaintiff is not entitled to any equitable extension of the statute of limitations. Under New York law, the doctrines of equitable tolling and equitable estoppel will toll a statute of limitations if "plaintiff was induced by fraud, misrepresentation[] or deception to refrain from filing a timely action."

---

[11] Defendant makes this argument as to the following seventeen policies: Aryeh, Bailey, Berkowitz, Castoro, Cowman, Esau, Gay, Grosse, Kimberly, Koslow, Morse, Moser, Ostad (#1), Reiber, Russo, Scordas, and Wallace. See Defs.' Mot. 27 & App. no. 2; see also Compl. ¶¶ 39, 43, 51, 69, 77, 89, 106, 117, 133-34, 138, 175, 177-78, 189, 217, 223, 225-26, 241. .

[12] These are the Criden-Roebuck, Lipman, Lurie, Mills, Ostad (#2), Radner, Stinchcomb, and Wirth policies. Id. ¶¶ 80, 145, 150, 168, 205, 234, 255. The second Ostad policy, which defendant claims plaintiff dropped, would also fall within this category. Id. ¶¶ 186, 188.

Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007). The analysis for both doctrines is the same. Corporate Trade, Inc. v. Golf Channel, 563 F. App'x 841, 841-42 (2d Cir. 2014). The doctrines do not apply when "the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of plaintiff's underlying substantive cause of action." Kaufman v. Cohen, 307 A.D.2d 113, 122 (N.Y. App. Div. 2003) (citing Rizk v. Cohen, 535 N.E.2d 282, 286 (N.Y. 1989)). The mere failure to disclose a wrong committed does not constitute a separate act of concealment sufficient to estop a defendant from pleading a statute of limitations defense. See Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1184 (N.Y. 2012) (contrasting a failure to disclose wrongdoing with conduct that did warrant estoppel, such as when a "defendant misappropriated [a] plaintiff's funds, and then used her position as . . . plaintiff's bookkeeper to cover up what she had done" (citing General Stencils, Inc. v. Chiappa, 219 N.E.2d 169, 171 (N.Y. 1966))).[13]

Further, plaintiff must plead that he exercised due diligence in bringing an action to receive equitable relief. Abbas, 480 F.3d at 642; see also In re Fischer, 308 B.R. 631, 657 (Bankr. E.D.N.Y. 2004) (stating that the "burden is on the plaintiff to establish" that he exercised "due diligence . . . in pursuing discovery of [his] claims and in bringing his action" (quoting Simcuski v. Saeli, 377 N.E.2d 713, 717 (N.Y. 1978))). "The doctrine of equitable estoppel will not apply if the plaintiff possesses 'timely knowledge' sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable [s]tatute of [l]imitations." In re Fischer, 308 B.R. at 657 (quoting Harris v. Wilmorite Corp., 697 N.Y.S.2d 439, 440 (App. Div. 1999)).

Plaintiff has not adequately alleged a misrepresentation beyond what forms the basis of its underlying claims. Plaintiff's breach claims are based on defendant's initial lapse notices. Plaintiff

---

[13] Plaintiff cites to a number of cases that discuss "fraudulent concealment." See Pl.'s Opp'n at 24-28. Most of those cases, however, refer to affirmative fraudulent concealment claims, not the principles of equitable relief from a statute of limitations that may be triggered by a defendant's acts of deception. E.g., Woods v. Maytag Co., 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011). Many of plaintiff's authorities are therefore inapposite.

12

argues that defendant concealed these breaches by sending additional notices repeating the allegedly incorrect amounts due. Pl.'s Opp'n at 26. These notices, plaintiff contends, concealed the breaches by failing to provide an explanation of how the amounts due were calculated. Id. at 25-26. Plaintiff's characterization is unpersuasive. The subsequent communications simply repeated the same allegedly incorrect information—at most, defendants failed to disclose their past wrongdoing. This does not warrant estoppel. See Corsello, 967 N.E.2d at 1184.

Even were the additional notices sufficiently separate from the allegedly breaching conduct to support equitable estoppel, plaintiff cannot demonstrate that it exercised the required due diligence in discovering its claims. The policy holders were placed on inquiry notice of their claims when they received the initial lapse notices. According to plaintiff, the terms of the policies required three months' minimum payments and the notices required four. Based on the allegations in the complaint, it is safe to assume that the policy holders had the ability to calculate one month's minimum payment. After all, it was apparently a selling point of the policies that policy holders could pay that amount each month. Compl. ¶ 16. And if the policy holders could calculate one month's minimum, they could calculate three. Thus when the policy holders received the initial lapse notices, they obtained "knowledge of facts from which [the breach] could reasonably be inferred." Sargiss v. Magarelli, 909 N.E.2d 573, 576 (N.Y. 2009). It was not necessary for defendant to explain the calculations behind its lapse notice when the policy holders could perform those calculations themselves.

**C. Fraud Claims**

Forty-nine of plaintiff's fraud claims are time barred under New York law. Fraud claims must be brought within six years of when the cause of action accrued or two years of when the fraud was discovered or "could with reasonable diligence have [been] discovered," whichever is later. N.Y. C.P.L.R. § 213(8). As stated above, the fraud claims accrued when the policies were originally purchased. Carbon Capital, 932 N.Y.S.2d at 495; Certain Underwriters at Lloyd's v. Milberg LLP, No.

13

08-cv-7522, 2009 WL 3241489, at *5 (S.D.N.Y. Sept. 30, 2009) (citing cases). The complaint alleges that forty-nine of the policies were purchased in 2007 and 2008, more than six years before the original complaint.[14] For these policies, the fraud claims can only survive if they could not have been discovered with reasonable diligence before June 12, 2015—two years before the original complaint. For the same reasons discussed above, plaintiff or its predecessors in interest could, with reasonable diligence, have discovered the alleged fraud when they received the initial lapse notices. According to the complaint, those notices were sent between 2010 and 2014. The fraud could therefore have been discovered more than two years before plaintiff filed suit, rendering these forty-nine claims untimely.

Plaintiff does not allege a purchase date for the remaining policies—Cowman, Mason, Scordas, and Sodikoff. While they were likely purchased more than six years before the complaint,[15] this is not certain based on the allegations in the complaint. I thus cannot conclude, at this stage in the proceedings, that the fraud claims relating to those four policies are untimely.

### III. I Cannot Conclude That Plaintiff Has Failed to State a Claim Under Any of the Potentially Applicable States' Laws.

Because the complaint does not allege the facts necessary to determine which state's substantive law applies to the breach of contract and fraud in the inducement claims, I must deny defendant's motion to dismiss the remaining claims on the merits. Four of the fraud claims and thirty-six of the lapse-notice breach of contract claims therefore survive the motion to dismiss.[16]

Under New York's choice-of-law rules, New York substantive law applies when there is no "actual conflict of laws on the issues presented." Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d

---

[14] Plaintiff alleges that the Wallace policy was purchased around October 25, 2017, but this appears to be a typographical error. Compl. ¶ 237. The remainder of the allegations as to that policy are consistent with a 2007 purchase date. See id. ¶¶ 237-42.

[15] The Mason policy had already been transferred to JMA by July 11, 2011. Id. ¶ 158. The Sodikoff policy had already been transferred to Wilmington by August 14, 2011. Id. ¶ 228. And the Cowman and Scordas policies both contain the year "2007" in their titles. Id. ¶¶ 74, 224.

[16] In addition, all fifty-three COI-rate breach of contract claims survive, as defendant makes no argument as to why they should be dismissed. See supra p. 5 n.6.

557, 566 (2d Cir. 2011). An actual conflict is when "the applicable law from each jurisdiction provides different substantive rules," that are "relevant to the issue at hand" and "have a significant *possible* effect on the outcome." Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 331 (2d Cir. 2005) (quotation marks and citations omitted). When there is such a conflict, the following claim-specific tests govern the choice-of-law determination.

For contract claims, New York courts apply the "center of gravity" approach. Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065, 1068 (N.Y. 1994). Under this approach, the law of the state with "the most significant relationship to the transaction and the parties" will apply. Id. (quoting Restatement (Second) of Conflict of Laws § 188(1)). To determine which state has such a relationship, the court "may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1031 (2d Cir. 1996). "In disputes involving life insurance," this is often "the state where the insured resided at the time the policy was applied for." U.S. Bank Nat'l Ass'n v. Sun Life Assurance Co. of Canada, No. 14-cv-4703, 2016 WL 8116141, at *11 (E.D.N.Y. Aug. 30, 2016); see also Restatement (Second) of Conflict of Laws § 192. For tort claims, "New York courts apply an 'interests' analysis." Brink's Ltd., 93 F.3d at 1031 (quoting Istim, Inc. v. Chem. Bank, 581 N.E.2d 1042, 1044 (N.Y. 1991)). Under this approach, the law of the state with "the great[est] interest in having its law applied" will govern. Id. When the conflicting laws in question are conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply." Id. (quoting Cooney v. Osgood Mach., Inc., 612 N.E.2d 277, 280 (N.Y. 1993)). Thus, the policy owners' residences are once again central to the analysis.

When allegations in a complaint do not establish which state's law applies, courts consider whether plaintiff has stated a plausible claim under any of the potentially applicable sets of laws. See

15

Bristol–Myers Squibb Co. v. Matrix Labs. Ltd., 655 F. App'x 9, 13 (2d Cir. 2016); Speedmark Transp., Inc. v. Mui, 778 F. Supp. 2d 439, 444 (S.D.N.Y. 2011). Here, however, I lack the information necessary to narrow down the potentially applicable jurisdictions to a manageable number. Because I cannot conclude at this stage of the litigation that plaintiff has failed to state a claim under any of the potentially applicable sets of laws, I deny defendant's motion to dismiss for failure to state a claim.

## CONCLUSION

For the reasons discussed above, I grant defendant's motion to dismiss in part and deny it in part. Specifically, defendant's motion to dismiss some of the claims as time barred is granted in part and denied in part. Defendant's motions to dismiss for lack of standing and for failure to state a claim are denied. For the sake of clarity, I have included an appendix to this opinion, listing which claims as to which policies have been dismissed.

So ordered.

Dated: May 18, 2018                   s/ Allyne R. Ross
     Brooklyn, NY                  Allyne R. Ross
                                              United States District Judge

**Appendix**

| Original Policy Holder - First Name | Original Policy Holder - Last Name | Policy Number | Disposition | | |
|---|---|---|---|---|---|
| | | | Lapse-Notice Breach | COI Breach | Fraud in the Inducement |
| Connie | Angelou | 97528616 | Surviving | Surviving | Dismissed |
| Moussa | Aryeh | 97527406 | Dismissed | Surviving | Dismissed |
| Joseph | Bailey | 97523259 | Dismissed | Surviving | Dismissed |
| Melba | Bartschi | 97523494 | Surviving | Surviving | Dismissed |
| Frederika | Berkowitz | 97524836 | Dismissed | Surviving | Dismissed |
| Vivian | Birndorf | 97526154 | Surviving | Surviving | Dismissed |
| Martha | Caldwell | 97527405 | Surviving | Surviving | Dismissed |
| Edward | Capobianco | 97527392 | Surviving | Surviving | Dismissed |
| Rocco | Castoro | 97523545 | Dismissed | Surviving | Dismissed |
| James | Costello | 97525720 | Surviving | Surviving | Dismissed |
| Fred | Cowman | 97524491 | Dismissed | Surviving | Surviving |
| Sylvia | Criden-Roebuck | 97525513 | Surviving | Surviving | Dismissed |
| Marilyn | Diamond | 97524935 | Surviving | Surviving | Dismissed |
| Daniel | Esau | 97523359 | Dismissed | Surviving | Dismissed |
| Faith | Everest | 97523969 | Surviving | Surviving | Dismissed |
| Lupa | Fraga | 97524177 | Surviving | Surviving | Dismissed |
| James | Gaines | 97527197 | Surviving | Surviving | Dismissed |
| Shirley | Gillan | 97525809 | Surviving | Surviving | Dismissed |
| Kenneth | Grosse | 97523103 | Dismissed | Surviving | Dismissed |
| Charles | Hagedorn | 97523417 | Surviving | Surviving | Dismissed |
| Harry Richard | Horst | 97528110 | Surviving | Surviving | Dismissed |
| Howard | Katzen | 97524413 | Surviving | Surviving | Dismissed |
| John | Kimberly | 97523848 | Dismissed | Surviving | Dismissed |
| Joyce | Koslow | 97526934 | Dismissed | Surviving | Dismissed |
| Georgene | Laursen | 97527933 | Surviving | Surviving | Dismissed |
| Barbara | Lipman | 97524820 | Surviving | Surviving | Dismissed |
| Rita | Lurie | 97526380 | Surviving | Surviving | Dismissed |
| Anita | Manda | 97526250 | Surviving | Surviving | Dismissed |

**Appendix, Cont'd**

| Original Policy Holder - First Name | Original Policy Holder - Last Name | Policy Number | Disposition | | |
|---|---|---|---|---|---|
| | | | Lapse-Notice Breach | COI Breach | Fraud in the Inducement |
| Carl | Mason | 97529065 | Surviving | Surviving | Surviving |
| Irene | Materdomini | 97527347 | Surviving | Surviving | Dismissed |
| Ed | Mills | 97523745 | Surviving | Surviving | Dismissed |
| Wilma | Morse | 97527826 | Dismissed | Surviving | Dismissed |
| Florence | Moser | 97522823 | Dismissed | Surviving | Dismissed |
| Josephine | Murko | 97525645 | Surviving | Surviving | Dismissed |
| Doris | Opp | 97523864 | Surviving | Surviving | Dismissed |
| Moshe-Haim | Ostad | 97521611 | Dismissed | Surviving | Dismissed |
| Moshe-Haim | Ostad | 97521613 | Surviving | Surviving | Dismissed |
| Sylvester | Gay | 97523699 | Dismissed | Surviving | Dismissed |
| Bendel | Payne | 97525245 | Surviving | Surviving | Dismissed |
| Sondra | Platt | 97526656 | Surviving | Surviving | Dismissed |
| Sandra | Pozner | 97526820 | Surviving | Surviving | Dismissed |
| Robert | Radner | 97527740 | Surviving | Surviving | Dismissed |
| Morton | Rappaport | 97523207 | Surviving | Surviving | Dismissed |
| Nathan | Reiber | 97528529 | Dismissed | Surviving | Dismissed |
| Anthony | Russo | 97527996 | Dismissed | Surviving | Dismissed |
| Chris | Scordas | 97523553 | Dismissed | Surviving | Surviving |
| Howard | Sodikoff | 97522535 | Surviving | Surviving | Surviving |
| Hilda | Stinchcomb | 97526349 | Surviving | Surviving | Dismissed |
| Phyllis | Wallace | 97523414 | Dismissed | Surviving | Dismissed |
| Gyou | Whang | 97525464 | Surviving | Surviving | Dismissed |
| Naomi | Wilzig | 97526706 | Surviving | Surviving | Dismissed |
| Arthur | Wirth | 97528170 | Surviving | Surviving | Dismissed |
| Arthur | Wirth | 97528179 | Surviving | Surviving | Dismissed |