# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ISAAC JAKOBOVITS, as trustee of the
LITE TRUST I

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">v.</div>

PHL VARIABLE INSURANCE
COMPANY,

<div style="margin-left:2em">Defendant.</div>

Civil Action No. 1:17-cv-03527-ARR-RER

## PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE ANTICIPATED TESTIMONY OF DEFENDANT'S EXPERT WITNESSES SANDBERG AND PFEIFER

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................ 1

II.    BACKGROUND ................................................................ 3

   A.   PLAINTIFF'S CLAIMS ................................................................ 3

   B.   PFEIFER'S REPORT ................................................................ 4

   C.   SANDBERG'S REPORT ................................................................ 5

III.   APPLICABLE LAW ................................................................ 5

IV.   ARGUMENTS ................................................................ 9

   A.   PFEIFER'S EXPERT TESTIMONY IS BASED ON INADMISSIBLE HEARSAY AND SHOULD BE EXCLUDED ................................................................ 9

      1.   Pfeiffer's Reports Are A Conduit For Inadmissible Hearsay ................................. 9

   B.   PHL'S EXPERT REPORTS SHOULD BE EXCLUDED BECAUSE THEY FAIL TO SATISFY THE *DAUBERT* STANDARD FOR EXPERT TESTIMONY ................................................ 11

      1.   Pfeifer Should Not Be Allowed To Opine On Legal Issues, Including Whether The Discrimination That Occurred In PHL's COI Rate Change Was Fair ...................... 11

      2.   Pfeifer Should Only Be Allowed To Opine On Issues Of Fact Directly Related To Actuarial Principles ................................................................ 13

      3.   Sandberg's Report Should Be Excluded Because It Will Not Be Helpful To The Jury 15

      4.   The Bulk of Sandberg's Report Is Hearsay "Background" And Bald Speculation .. 16

      5.   Sandberg Should Not Be Allowed To Opine On Damages ...................................... 17

V.    CONCLUSION ................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
  364 F. Supp. 3d 291 (S.D.N.Y. 2019) ...................................................... 8

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002) ...................................................... 6, 7, 9

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) ...................................................... 7

*Cacciola v. Selco Balers, Inc.*,
  127 F. Supp. 2d 175 (E.D.N.Y. 2001) ...................................................... 6

*Daubert v Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ......................................................*passim*

*Gen. Elec. Co. v Joiner*,
  522 U.S. 136 (1997) ...................................................... 7

*Golden Pacific Bancorp v. F.D.I.C.*,
  273 F.3d 509 (2d Cir. 2001) ...................................................... 11, 12

*Goonewardena v. Forster & Garbus LLP*,
  2019 WL 121677 (E.D.N.Y. Jan. 7, 2019) ...................................................... 12

*In re Mirena IUD Prod. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016) ...................................................... 7

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*,
  341 F. Supp. 3d 213 (S.D.N.Y. 2018) ...................................................... 6, 7

*In re Platinum-Beechwood Litig.*,
  469 F. Supp. 3d 105 (S.D.N.Y. 2020) ...................................................... 8

*In re Rezulin Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ......................................................*Passim*

*Lake Constr. & Dev. Corp. v. City of New York*,
  211 A.D.2d 514 ...................................................... 12

*Lara v. Delta Int'l Mach. Corp.*,
    174 F. Supp. 3d 719 (E.D.N.Y. 2016) ............................................................. 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) ..................................................... 10, 11

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013) ............................................................................ 10

*Maysek & Moran, Inc. v. S.G. Warburg & Co.*, Inc.,
    284 A.D.2d 203 (N.Y. Sup. 1st Dept. 2001) ................................................. 12

*Nimely v City of New York*,
    414 F.3d 381 (2d Cir. 2005) ............................................................................. 7

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997) ............................................................................... 6

*Shatkin v. McDonnell Douglas Corp.*,
    727 F.2d 202 (2d Cir. 1984) ............................................................................. 8

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007) ............................................................................. 5

*Wills v Amerada Hess Corp.*,
    379 F.3d 32 (2d Cir. 2004) ......................................................................... 6, 13

Rules

Fed. R. Civ. P. 56(c)(2) ........................................................................................... 6

Fed. R. Evid. 401 ..................................................................................................... 8

Fed. R. Evid. 703 ................................................................................................... 10

Fed. R. Evid. 704(a) .............................................................................................. 13

Fed. R. Evid. 803(18) ............................................................................................ 10

Federal Rules of Evidence 403 ..................................................................... 2, 8, 13

Federal Rule of Evidence 702*passim*

## I. INTRODUCTION

The expert reports proffered by Defendant should be excluded because Defendant, PHL Variable Insurance Company ("PHL"), cannot meet its burden of showing that its experts' reports and related testimony: (a) will help the trier of fact understand the evidence or determine a fact in issue; (b) is based on sufficient facts or data; (c) is the product of reliable principles and methods; and (d) is the result of having reliably applied the principles and methods to the facts as required by Federal Rule of Evidence 702.

Defendant PHL Variable Insurance Company ("PHL" or "Defendant") engaged two experts, Timothy C. Pfeifer, and David Sandberg. Pfeifer issued a report disputing the allegations raised by Plaintiff, Isaac Jakobovits as Trustee of the Lite Trust I ("Lite" or "Plaintiff"), namely, arguing that the cost of insurance ("COI") rate adjustments that PHL made to the following insurance policies was proper:

| No. | Original Policy Holder – First Name | Original Policy Holder – Last Name | Policy Number |
|-----|-------------------------------------|-------------------------------------|---------------|
| 1.  | Connie   | Angelou     | 97528616 |
| 2.  | Vivian   | Birndorf    | 97526154 |
| 3.  | Martha   | Caldwell    | 97527405 |
| 4.  | Marilyn  | Diamond     | 97524935 |
| 5.  | Faith    | Everest     | 97523969 |
| 6.  | Shirley  | Gillian     | 97525809 |
| 7.  | Georgene | Laursen     | 97527933 |
| 8.  | Irene    | Materdomini | 97527347 |
| 9.  | Josephine| Murko       | 97525645 |
| 10. | Doris    | Opp         | 97523864 |
| 11. | Bendel   | Payne       | 97525245 |
| 12. | Sandra   | Pozner      | 97526820 |
| 13. | Naomi    | Wilzig      | 97526706 |

(the "Policies"). Pfeifer's Report, however, should be excluded because Defendant cannot meet its burdens under Federal Rules of Evidence 403 and 702, or under *Daubert* and its progeny. On a

motion to exclude expert testimony, the proponent of expert opinion bears the burden of establishing admissibility by a preponderance of the evidence. The proposed Pfeifer testimony should also be excluded because Defendant cannot meet its burden of proving admissibility and relevance as required by Federal Rule of Evidence 403.

Specifically, Pfeifer's testimony should be excluded because it is not: (a) based on sufficient facts or data, (b) the product of reliable principles and methods, and (c) the result of having reliably applied the principles and methods to the facts of the case. This Court should exclude all Pfeifer testimony, or in the alternative, any Pfeifer testimony based on paragraphs 7, 13-53 of the Pfeifer Report because, under *Daubert* and its progeny, Defendant cannot affirmatively show the admissibility of the proposed testimony by a preponderance of the evidence.

The proposed expert testimony is the product of argument and rhetoric, rather than the application of reliable scientific principles and methods (in part because Pfeifer did not perform any numerical analysis). Nor is Pfeifer's proposed testimony based on reliable or admissible evidence (in part because it is entirely based on self-serving and unsupported opinions). Thus, it is not helpful to the trier of fact. Rather than providing truly expert opinion testimony based on reliable scientific principles, methods, and evidence, Defendant's purported expert uses unreliable methodologies and offers mere opinions, speculation, and hearsay.

Sandberg's report should be excluded because it is addressed to issues that are no longer relevant in this litigation—specifically, claims that have already been dropped by Plaintiffs. Separately, even were Sandberg's report relevant to the current claims, his opinions are inadmissible testimony as to the intent, motive, and "real reason" behind Glowacki's analysis, not expert testimony that Sandberg's actuarial training has any bearing on.

While there may be relevant topics or expert actuarial analysis on which Defendant's expert *might have* offered their opinions, Defendants reports did not focus on this issue. Rather, Defendant's expert purports to make factual findings, identify but-for causation, identify the motives of the parties and other witnesses, and present an inaccurate summary of the case's underlying events. None of this testimony is proper or admissible from an expert witness and must be excluded.

## II. BACKGROUND

### A. Plaintiff's Claims

Lite is in the business of purchasing life insurance policies on the secondary market. This market helps to provide liquidity in the life insurance market and to provide policy owners who may no longer want their life insurance policies with a profitable option to rid of themselves of the expense of maintaining policies that they no longer need. As the purchaser of said policies, Lite is entitled to the same benefits, and has the same responsibilities, as the original policy owners. Over the years, Lite has purchased hundreds of life insurance policies. Originally, 53 such policies were at issue in this case. As the case progressed, Lite's experts performed an analysis on each of the policies in this suit and determined that the thirteen policies shown in the table above were policies on which Lite sustained monetary damages as the result of COI adjustments that were inconsistent with the language of the policies themselves.

The Policies identified above are binding and enforceable contracts. The terms of each of the Policies stated that PHL could not alter the COI rate used to determine its Cost of Insurance Charge on a basis that "discriminate[s] unfairly within any class of insureds." First Amended Complaint [ECF 12] ("FAC") ¶ 279. Each policy further required that any change in COI rates

"will be determined prospectively" and that PHL "will not distribute past gains or recoup prior losses, if any, by changing rates." *Id.*

PHL materially breached each of the Policies, including its implied duty of good faith and fair dealing, when it unfairly and discriminatorily raised the COI rate it used to calculate the COI Charge it applied to the Policies. Simply put, PHL did not apply the 2011 COI change uniformly to all PAUL policies in the same class of insureds, and PHL breached each of the Policies when it attempted to recoup prior losses by changing the COI rates. Prior to PHL's material breach, each policyholder fully performed its obligations under each policy. *See id.* ¶ 280.

As a direct and proximate cause of PHL's actions, Plaintiff and/or the prior policyholders of each of the Policies in whose shoes Plaintiff now stands, and whose rights Plaintiff now holds, suffered damages. These damages include the loss of the death benefits as outlined in Plaintiff's own expert reports. *See generally* Glowacki Rep.; Glowacki Supp. Rep. These damages may also include death benefits they would have received in the future, the loss of the additional funds paid or otherwise lost to PHL following its COI increase, and the loss in the value of their policies in the market because of PHL's COI increase, as well as all premiums previously paid to PHL and consequential damages and interest. *See id.* ¶ 281.

## B. Pfeifer's Report

Pfeifer's report opines that the "[t]he policy form language relevant to COI rate changes was not violated by PHL's COI Adjustment, as the changes were not unfairly discriminatory, were applied consistently, impacted contracts only prospectively, and did not incorporate any past gains or losses or recoup prior losses, among other factors." Ex. A, Pfeifer Rep. at 2. He also argues that "PHL's COI rate adjustments were consistent with the Company's Determination Policy and with Actuarial Standard of Practice Number 2." *Id*. Pfeifer argues, specifically, that the methodology

4

used in the COI adjustment, selecting issue ages 68+ or 65+ and face amounts of $1 million and above, was "fair discrimination." *Id.* at 2-3. He argues that these "classes were appropriately established based upon observed experience and future expectations . . . [and the] class definition does not represent "unfair discrimination." *Id.* at 3. Pfeifer's rebuttal report (Ex. E) suffers from the same flaws.

## C. Sandberg's Report

Sandberg's report analyzes the "breach of contract claim concerning grace period notices as it pertains to the list of policies attached as Exhibit 4." Sandberg Rep. at 1, attached as Ex. B. Sandberg analyzes issues of causation relating to the grace notices, arguing that "LITE Trust and the other policyowners were unable to manage and fund the policies they acquired in the life settlement market because of lack of appropriate funding, or they were unwilling to continue paying premiums on certain policies because they determined that retention of those policies was not in their economic best interests." *Id.* at 2. He also addresses the amounts on the notices and explains that "the grace notices did not impose additional premium costs for any of the policies, and at most only required the pre-payment of a month of premiums that the policyowner inevitably had to pay just weeks later to maintain the policies." Like the Pfeifer Report, Sandberg also provides an extensive amount of unsubstantiated information in his report with no citations or references to where this information can be verified. *See*, *e.g.*, *id.* at 2-17. Sandberg's rebuttal report (attached as Ex. D) suffers from the same flaws.

## III. APPLICABLE LAW

A proponent of expert opinion has the burden of establishing admissibility by a preponderance of the evidence. *See United States v. Williams*, 506 F.3d 151, 160 (2d Cir.2007). If an expert report "is based on data, a methodology, or studies that are simply inadequate to support

the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). To be admitted, "it is critical that an expert's analysis be reliable at every step." *Id.* at 267.

"Evidence contained in an expert's report therefore must be evaluated under FED. R. EVID. 702 before it is considered in a ruling on the merits of a summary judgment motion." *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001). "If a proffer of expert testimony in the form of an expert report is excluded as inadmissible under Rule 702, the summary judgment determination is made on a record that does not include that evidence." *Id.* (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66–67 (2d Cir. 1997)). Summary judgment motions must be supported by admissible evidence. *See*, *e.g.*, FED. R. CIV. P. 56(c)(2); *see also Raskin*, 125 F.3d at 66 ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment. . . . [A]n expert's report is not a talisman against summary judgment.") (citations omitted).

The Rules of Evidence require that expert testimony be: (a) such that it will help the trier of fact to understand the evidence or to determine a fact in issue; (b) based on sufficient facts or data; (c) the product of reliable principles and methods; and (d) the result of having reliably applied the principles and methods to the facts of the case. See FED. R. EVID. 702; *see also In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 239-240 (S.D.N.Y. 2018) ("[T]he party seeking to admit expert testimony must show by a preponderance of the evidence that: (i) the expert is qualified, (ii) the testimony is based on sufficient data, (iii) the testimony is the product of reliable methods reliably applied, and ([iv]) the testimony is relevant and will assist the jury."), *aff'd,* 982 F.3d 113 (2d Cir. 2020); *Wills v Amerada Hess Corp.*, 379 F.3d 32, 48 (2d Cir. 2004) ("In gauging reliability, the district court should consider the indicia of

reliability identified in Fed. R. Evid. 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case."). "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Under *Daubert*, trial courts serve as "gatekeepers," responsible for ensuring that an expert's testimony is based upon a reliable foundation and is relevant to the task at hand. *See id.* at 597. For an expert's data and methods to be reliable, they must meet some industry standard for sufficient rigor; it cannot be mere conjecture. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Expert testimony should be excluded if it is speculative or conjectural."). Likewise, expert testimony should be excluded where the proffered opinion is "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached." *Amorgianos*, 303 F.3d at 266. "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions." *Nimely v City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). Expert testimony cannot be admitted if there is insufficient data or a gap in logic between the data presented and the expert's resulting opinion. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v Joiner*, 522 U.S. 136, 146 (1997).

In addition, courts consider the actual analysis employed by the proffered experts in reaching their conclusions and the analysis must clearly lead to the conclusions. "Courts have found analytical gaps to be too great, for example, when a critical step in a prospective expert's reasoning is based on a highly dubious analogy." *See, e.g.*, *Mirena*, 341 F. Supp. 3d at 241 (citing *In re Mirena IUD Prod. Liab. Litig.,* 169 F. Supp. 3d 396, 439 (S.D.N.Y. 2016) ("Such a subjective

comparison of muscle of a pig heart to a female uterus creates simply too great an analytical gap between the data and the opinion proffered to pass muster under Rule 702 and *Daubert*.") (cleaned up); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984) (rejecting expert methodology based on an "apples and oranges" comparison).

In addition to the requirements of Rule 702, expert testimony is also subject to the relevancy requirement under FED. R. EVID. 401. *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 114 (S.D.N.Y. 2020). Further, under FED. R. EVID. 403, "the Court may still exclude relevant evidence 'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues [or] misleading the jury." *Id.* (quoting FED. R. EVID. 403). "The Rule 403 [probative value] inquiry is particularly important in the context of expert testimony, 'given the unique weight such evidence may have in a jury's deliberations.'" *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 364 F. Supp. 3d 291, 325 (S.D.N.Y. 2019) (citation omitted).

In keeping with the cases above, it is common for courts to exclude expert testimony on things such as narrative backgrounds, ethics, and motive. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531 (S.D.N.Y. 2004). For example, the *Rezulin* Court precluded the experts from offering testimony regarding "the alleged motive, intent, or state of mind" of other parties. *Id.* at 546-47 (citations omitted). In doing so, the *Rezulin* Court noted that such "musings" on the "intent, motives, or state of mind" are improper because (i) they "have no basis in any relevant body of knowledge or expertise"; and (ii) such testimony described "lay matters which a jury is capable of understanding and deciding without the expert's help." *Id.* at 546 (citations omitted). Classically, "the question of intent is a classic jury question and not one for the experts." *Id.* at 547 (citations omitted). The *Rezulin* Court found that narrative "backgrounds" were excludable for

similar reasons. *See id.* at 551. In excluding the proffered narrative history (which the court described as a "background"), the *Rezulin* Court found that "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. An expert is not required," and that the expert proffered to provide the narrative "does no more than counsel for [the party] will do in argument, i.e., propound a particular interpretation of [the opposing party]'s conduct." *Id.* (citations omitted). Finally, expert testimony cannot be based merely on an expert's subject, personal belief. *See id.* at 542-43 (excluding testimony related to ethical obligations because experts admitted that such testimony was based on their "personal, subjective views," and finding that such testimony does not meet the Rule 702 requirement that expert testimony rest on "knowledge," which requires "more than subjective belief or unsupported speculation") (citations omitted).

## IV.    ARGUMENTS

An expert's methodology must be reliable at every step to be admissible. *See Amorgianos*, 303 F.3d at 267. But neither the methodology of Pfeifer nor of Sandberg meets this criterion. In some cases, neither Pfeiffer nor Sandberg even offer a methodology. Thus, as detailed below, the testimony of both Pfeifer and Sandberg are inadmissible.

### A.    Pfeifer's Expert Testimony Is Based On Inadmissible Hearsay And Should Be Excluded

#### 1.    Pfeiffer's Reports Are A Conduit For Inadmissible Hearsay

Pfeifer's opinions in paragraphs 13 to 31 of his Report are inadmissible. These two sections titled "Universal Life Products," Ex. A ¶¶ 13-20, and "PHL Variable's Universal Life Products," Ex. A ¶¶ 21-31, contain a recitation of mostly disputed factual allegations. The same is true of Paragraphs 32-34, 36-53, which make factual statements about PHL's actions without providing any indication of the source of such statements.  Though some portions of this section may be

based on evidence of record, the Report does not identify any sources, so there is no way to identify what is based on PHL records, what is based on sources normally relied on by actuaries, and what is merely a regurgitation of statements that the attorneys would like the expert to make. *See Rezulin*, 309 F.Supp.2d at 551 (excluding narrative background because "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. An expert is not required"). Thus, this section is primarily a conduit for unreliable and inadmissible hearsay. The same is true of Paragraphs 4 through 6 of Pfeifer's Supplemental Report. While experts can rely on certain types of hearsay in certain situations, such hearsay must be evaluated before it is presented to the jury to ensure that its probative value is not substantially outweighed by its prejudicial effect. FED. R. EVID. 703. For example, experts often rely on learned treatises, which would not violate the hearsay rule. FED. R. EVID. 803(18). But no documents or other references are cited to for the multitude of factual allegations in this section—making it impossible to attribute any of the statements to learned treatises, authenticated evidence, PHL business records, or anything else. Thus, all the matter and topics encompassed in paragraphs 13 to 34 and 36-53 are inadmissible hearsay and Pfeifer must be precluded from testifying about them.

Pursuant to "Fed. R. Evid. 703, 'a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis for his testimony.'" *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007)). "The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events. And the job of judging those witnesses' credibility and drawing inferences from their testimony belong to the factfinder." *Id*.

If Pfeifer were allowed to relate his view of the so-called "background," that testimony would violate the hearsay rule. *Louis Vuitton*, 525 F. Supp. 2d at 666. Pfeifer would be relating the out-of-court statements of others—indeed, statements from unidentified sources—and those statements would be offered to support the truth of the matters asserted. *See id.* ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."); *see also* Ex. A ¶¶ 13-20. Pfeifer was not a fact witness to any of the events or even the themes recited in the background section. Thus, his testimony regarding the purportedly relevant "background" or "history" has no probative value independent of the underlying documents or witnesses with whom he may have spoken. To the extent those documents or witnesses contain relevant information, they can be introduced as evidence on their own, rather than allowing Pfeifer to lend the imprimatur of an expert witness to bolster their credibility. *See Rezulin*, 309 F.Supp.2d at 551 ("[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence. An expert is not required") (citations omitted). Thus, Pfeifer must be precluded from testifying as to the "Universal Life Products" section or "PHL Variable's Universal Life Products" section. *See* Ex. A ¶¶ 13-34, 36-53.

### B. PHL's Expert Reports Should Be Excluded Because They Fail To Satisfy The *Daubert* Standard For Expert Testimony

#### 1. Pfeifer Should Not Be Allowed To Opine On Legal Issues, Including Whether The Discrimination That Occurred In PHL's COI Rate Change Was Fair

Pfeifer continually and improperly opines on legal issues. For example, Paragraph 34 opines as to PHL's contractual rights, Paragraph 37 opines as to whether the accused COI changes were permitted by the policy, Paragraph 45 opines that the COI changes were consistent with policy language, Paragraph 46 opinions about PHL's obligations under the contracts, and

Paragraphs 7 through 9 of his Supplemental Report opines on contract language and the relevance of sales illustrations. While Pfeifer is certainly entitled to hold such opinions, he should not be allowed to provide expert testimony regarding the interpretation of the contracts. Ordinarily, contract interpretation is a legal issue for the Court to decide. *See*, *e.g.*, *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) ("The interpretation of an unambiguous contract . . . is also a question of law reserved for the court.") (citation omitted); *Goonewardena v. Forster & Garbus LLP*, No. 18-CV-00029, 2019 WL 121677 at *5 (E.D.N.Y. Jan. 7, 2019) (same); *Maysek & Moran, Inc. v. S.G. Warburg & Co.*, Inc., 284 A.D.2d 203, 204 (N.Y. Sup. 1st Dept. 2001) (holding that contract interpretation is "a question of law for the court to pass on") (quoting *Lake Constr. & Dev. Corp. v. City of New York*, 211 A.D.2d 514, 515, 621 N.Y.S.2d 337). But even if the contracts are ambiguous such that their interpretation would become a fact issue,[1] Pfeifer is an actuary and holds no legal training—he should not be allowed to opine on issues of contract interpretation, nor on the motives or intent of the parties. *Rezulin*, 309 F.Supp.2d at 546-47 (excluding expert testimony regarding "the alleged motive, intent, or state of mind" of other parties.).

The issue of Pfeifer's opining as to legal issues carries over to his offering opinions on the ultimate legal conclusions in this case. Pfeifer opines with respect to the COI rate changes at issue in this litigation, that the "changes were not unfairly discriminatory." *Id.* at 2. Whether or not the discrimination was fair, however, is a legal question. Pfeifer's expertise as an actuary does not make him an expert with respect to the legal issue of whether the discrimination was fair. Pfeifer should only be allowed to opine regarding actuarial principles, and any associated calculations he performed.

---

[1] *See Golden Pacific Bancorp*, 273 F.3d at 515 ("Where contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact.") (citation omitted).

Similarly, Pfeifer states that "[t]he methodology reflected in the COI rate adjustment—the calculation of the Present Value of Future Distributable Earnings at the time of the COI changes under original and revised assumptions—was (and is) reasonable." But whether the calculation was reasonable is a legal question, and Pfeifer's expertise as an actuary does not make him an expert with respect to the legal issue of whether the calculation was reasonable. As an expert witness, Pfeifer should only be allowed to offer opinions as to issues where (1) he has particular scientific expertise (i.e. actuarial issues), and (2) where his opinions are the products of reliable data and methods. Pfeiffer's opinions satisfy neither of these requirements.

Obviously, experts can sometimes opine on the ultimate issue before the jury. FED. R. EVID. 704(a). In all cases, however, the probative value of such testimony must not be outweighed by the prejudicial effect, and such testimony must be grounded on sufficient facts or data to which the witness has reliably applied reliable principles and methods. *See* FED. R. EVID. 403; *Wills*, 379 F.3d at 48. Pfeifer's proposed testimony does not meet this test. Pfeifer admits that the COI increases were not applied to all policies and, therefore, discriminated amongst policyholders. *See* Ex. A at 3. Pfeifer then simply engages in lawyerly argument and non-expert handwaving to arrive at the conclusion that there was not unfair discrimination between members of the same class. *Id.* at 14. There are no calculations, recitations from treatises, or interpretations of complex actuarial procedures or policies—there is simply Mr. Pfeifer's results-driven conclusion. *Id.* Such bald opinion is not sufficiently grounded in reliable principles or methodology to satisfy *Daubert* and its progeny. Moreover, because of the weight juries often give to expert testimony, the prejudicial effect such an opinion would have substantially outweighs the probative value of such unsupported conclusions.

### 2. Pfeifer Should Only Be Allowed To Opine On Issues Of Fact Directly Related To Actuarial Principles

Pfeifer should only be allowed to opine with respect to issues of fact directly related to actuarial principles. Furthermore, to be reliable, those facts must be supported by sources in the evidentiary record—including, for example, documents produced in the case, learned treatises, or company procedures—rather than simply providing a list of unsupported assertions. *See Rezulin*, 309 F.Supp.2d at 551. Pfeifer is an actuary, and he should only be advising the fact finder with respect to those issues within his purported expertise—namely, actuarial issues. He should not be permitted to cloak his subjective, non-expertise based opinions or conclusions with the imprimatur of an expert witness, because it is the fact finder's role to draw conclusions on these issues, and such conclusions (i.e. whether the COI increase was fair or not under New York law) are outside of Pfeiffer's claimed area of expertise.

In short, Pfeifer's report should be excluded on the basis of a complete lack of any reliable methodology—he fails to perform a single test, calculation, or even demonstrate special "actuarial knowledge" of any kind. "Despite the flexible inquiry required under *Daubert* and its progeny, and in order to uphold its gatekeeping function, a court should exclude expert testimony where it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 734 (E.D.N.Y. 2016). *Lara* involved an expert that said a saw that can be operated with the guard removed is automatically defective. The Court explained that "other than espousing this conclusory assertion, [the expert] admitted that neither prior to nor during the investigation of this case did he perform any tests regarding an alternative design which included an interlock device." *Id.* at 736. This is precisely what Pfeifer does in his report. He performs no math and no calculations. He does not assess any alternative approaches to the COI increase or perform any comparison among options PHL could have used to form its

classes. Pfeifer simply provides some copy and pasted background and then offers his unsupported opinion on the legal questions in the case. There is nothing in the report even demonstrating his ability to perform actuarial math and related calculations. As suggested above, such bald opinion unsupported by any meaningful analysis has no probative value and is highly prejudicial because of the weight jurors are likely to give experts. Thus, Pfeifer's report fails the test for admissibility and should be excluded.

### 3. Sandberg's Report Should Be Excluded Because It Will Not Be Helpful To The Jury

Sandberg's report should be excluded because Sandberg's testimony is no longer helpful after claims 1 and 3 were dismissed from the case. The Rules provide that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. RULES EVID. R. 702. As explained in *Daubert*, Rule 702 "requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. . . *[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful*." *Daubert*, 509 U.S. at 591 (emphasis added). Here, Sandberg's report only addresses issues related to Counts 1 and 3 in Plaintiff's FAC, both of which have now been dismissed. *See* ECF 81.

Claim 1 of Plaintiff's FAC was based on PHL having breached the policies when it terminated the policies the policyholder did not pay the minimum "amount due" PHL demanded, "which PHL knew to be greater than the actual minimum amount necessary to keep that policy in force for three months." FAC ¶ 165. Similarly, claim 3 related to the grace notices, and that "[t]he terms of each of policy precluded PHL from requiring a policyholder to pay more than three months' worth of premium payments to keep a policy in force." FAC ¶ 180. Sandberg's entire report focuses on the issues raised by the first and third claims. *See*, *e.g.*, Ex. B, Sandberg Report,

at ¶ 6 (stating that the report analyzes "breach of contract claim concerning grace period notices"), ¶¶ 8-11 (summarizing opinions, all of which relate to grace notices). Likewise, his summary of opinions focuses on the idea that "the grace notices did not impose additional premium costs for any of the policies, and at most only required the pre-payment of a month of premiums that the policyowner inevitably had to pay just weeks later to maintain the policies." *Id.* at ¶ 10. Because Sandberg's report only addresses issues raised by the now-dismissed first and third claims in Plaintiff's FAC, Sandberg's Report "does not relate to any issue in the case." *Daubert* at 591. Therefore, Sandberg's Report should be excluded.

### 4. The Bulk of Sandberg's Report Is Hearsay "Background" And Bald Speculation

If the Court does consider Sandberg's Report, despite its opining on claims that are no longer in the case, most of the Report still fails to meet the standards for admissibility.

Just as with Pfeifer, the "background" of Sandburg's Report consists of a string of hearsay assertions that do not sufficiently cite sources to allow the parties—or the Court—to determine whether they are of the type normally relied on by experts. *See*, *e.g.*, Sandburg Rep. ¶¶ 12-35, 38-44, 48-50. These portions of Sandburg's Report should be excluded for the same reasons as the discussed above regarding Pfeifer. *See Rezulin*, 309 F.Supp.2d at 551.

Equally concerning are Paragraphs 58 through 63 and 69 of Sandberg's Report, as well as Paragraph 12 of the Supplemental Report, where he repeatedly offers opinions as to Lite's financial situation. Similarly, in Paragraph 8 of his Supplemental Report, Sandberg opines regarding what he supposes Lite "seems to expect." These "opinions" are little more than a regurgitation of PHL's counsel's case theory. Sandberg's statements are nothing but conjecture—more the work of a psychic than of an actuary. Expert testimony as to persons or entities motives, intent, or state(s) of mind are inadmissible: "[T]he opinions of these witnesses on the intent, motives, or states of mind

of corporations, regulatory agencies, and others have no basis in any relevant body of knowledge or expertise." *Rezulin,* 309 F.Supp.2d at 546-47 (finding further that such testimony describes "lay matters which a jury is capable of understanding and deciding without the expert's help"). Furthermore, these statements are contradicted by the testimony of Lite's witnesses.

This attempt by Sandberg to string together expectations and opinions on the thought process of another party is not the work of an actuary or any other type of expert that would meet the Rule 702 standard of "reliable principles and methods." Not only does Sandberg fail to disclose his mindreading methods, but psychics are exactly the type of charlatanism that the Court's "gatekeeping" function is meant to exclude under *Daubert*. This transparent attempt to cloak counsel's case narrative in the guise of expert testimony should be rejected by this Court, and Sandberg's statements on these matters should be excluded.

### 5.      Sandberg Should Not Be Allowed To Opine On Damages

The Court should exclude the entirety of the rebuttal report proffered by Defendant's expert Sandberg, in which he makes false assumptions regarding the methods employed in the expert reports of Plaintiff's expert Glowacki.[2] In the alternative, the Court should at least exclude any Sandberg testimony based on Paragraphs 7-12 and 14-19.

The Rules provide that an expert "may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact* to understand the evidence or to determine a fact in issue . . . and (d) the expert has *reliably applied the principles and methods* to the facts of the case." FED. RULES EVID. R. 702 (emphasis added). As explained in *Daubert, "*[e]vidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally

---

[2] *See* Exhibit D, Sandberg's Rebuttal Report.

on that night. Rule 702's helpfulness standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. 579 at 591-92. As also explained by the Court in *Daubert*, "under the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. 579 at 589.

Here, the testimony proffered in Sandberg's rebuttal report is not helpful to the trier of fact because it makes a false assumption, and thus there is no "valid scientific connection to the pertinent inquiry." *Id*. at 591-592. The key fact ignored and misrepresented by Sandberg in his Rebuttal Report was the actual method used by Plaintiff's expert in forming his damages opinion. For example, Glowacki clearly sets forth how he arrived at the 15 policies included in his initial damages analysis[3] when he explains that "[i]n my opinion, for 15 of the COI Policies, PHL either (i) sent grace notices containing premium demands that exceeded the amount allowed under the policy, or (ii) raised COI rates above and beyond the scheduled annual COI increases, or (iii) some combination of (i) and (ii). Subsequently those policies lapsed after PHL sent said grace notices and/or implemented those increased COI rates."[4] Ex. C, Glowacki Rep. at 7. Yet Sandberg deliberately ignored this aspect of Glowacki's report when he makes a long-winded hindsight argument claiming that Glowacki is picking and choosing which policies to consider in his report to come up with a damages figure that is in Plaintiff's favor. *See* Ex. D, Sandberg Rebuttal Rep. at 2-5. For example, Sandberg writes "Mr. Glowacki's damages calculations ignore the reality of managing a life settlements portfolio by *simply choosing in hindsight which policy investment to include while ignoring others*." Ex. D at 2 (emphasis added). Sandberg's entire rebuttal report

---

[3] This list of 15 policies was reduced to the 13 policies listed above and referred to in the Stipulated Dismissal of Claims [ECF 82], for the reasons provided in Glowacki's Supplemental Report.

[4] Since Glowacki's initial report, Plaintiff dropped claims 1 and 3 from the case, [ECF 81], and so only category (ii) relating to the COI change remains a part of this case.

should be excluded because of this false assumption underlying his opinion, rendering his opinions not helpful to the trier of fact and having no valid scientific connection to the pertinent inquiry.

Here also, the testimony proffered in Sandberg's rebuttal report should be excluded because Sandberg failed to reliably apply the principles and methods of an actuarial expert when he deliberately ignored the method that was actually employed by Plaintiff's expert Glowacki to arrive at his damages estimates and opinions, and instead made a demonstrably false presumption regarding Plaintiff's expert's method in order to bolster his argument. In other words, Sandberg's rebuttal report sets up a "straw man" to present what appears to be a reasonable argument on its face, but in reality, is a misleading analysis that would confuse and deceive the jury. As discussed above, expert testimony as to motives, intent, or state of mind is inadmissible, as is testimony attempting to explain the "real motives" behind actions taken. *Rezulin,* 309 F.Supp. 2d at 546-47 ("[P]laintiffs' experts propose improperly to assume the role of advocates for the plaintiff's case by arguing as to the intent or motives underlying the conduct of [counterparty] or others, a transgression that has resulted in the exclusion of 'expert' testimony as to the 'real motive' behind certain business transactions."). As explained above, Sandberg presents a hindsight bias argument and claims that Glowacki was "choosing in hindsight which policy investment to include while ignoring others." Ex. D at 2. He also ignores or simply missed the explanation provided by Glowacki in his report for how he arrived at the 15 policies, and states summarily that "[f]or reasons he fails to explain in his report, Mr. Glowacki has decided to only assume that 15 polices of the 53 policies the Plaintiff sued on would have been funded in order to arrive at a damages claim." As shown in the quote above from Glowacki's report, Ex. C at 7, Glowacki clearly sets forth his reasoning for why he included the 15 policies in his damages analysis. Regardless of whether Sandberg simply skimmed Glowacki's report and missed this aspect of the report

accidentally, or he intentionally ignored the explanation provided in the report, Sandberg's gross misrepresentation of Glowacki's report, and attempt to testify as to Glowacki's motive, intent, or state of mind makes Sandberg's opinions on the report unreliable. For this additional reason, this Court should exclude all of Sandberg's testimony based on his rebuttal report.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court exclude portions of the anticipated testimony of Defendant's expert witnesses Sandberg and Pfeifer.


Dated: August 1, 2022                          Respectfully submitted,

By: */s/ Craig L. Uhrich*
Erik Dykema, Esq.
Andrew Bochner, Esq.
Craig L. Uhrich, Esq.
Paul L. Fraulo, Esq.
**Bochner IP PLLC**
295 Madison Avenue, 12th Floor
New York, New York 10017
andrew@bochnerip.com

*Attorneys for Plaintiff*
*Isaac Jakobovits, as Trustee of the LITE Trust I*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing document to be sent by electronic mail to all counsel of record on August 1, 2022.


/s/ Erik Dykema
Erik Dykema