**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ISAAC JAKOBOVITS, as Trustee of the LITE TRUST I, | ) ) ) | Civil Action No. 17-cv-3527-ARR-RER |
| Plaintiff, | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PHL** |
| v. | ) ) ) | **VARIABLE INSURANCE COMPANY'S MOTION TO EXCLUDE KEVIN GLOWACKI** |
| PHL VARIABLE INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | <u>ECF CASE</u> |
| | ) ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

I.    FACTUAL BACKGROUND ............................................................................. 2

      A.  Lite Sued PHLVIC On 53 Lapsed Policies.................................................. 2

      B.  Kevin Glowacki Issued a Damages Report On 15 Policies Based On an
          Assumed Reinstatement and No COI Rate Increases. .................................. 3

      C.  Kevin Glowacki Issued a Supplemental Damages Report Redoing His
          Calculations To Include Only 13 Policies. ................................................... 5

II.   ARGUMENTS AND AUTHORITIES............................................................. 6

      A.  Legal Standard. ........................................................................................... 6

      B.  Mr. Glowacki's Reinstatement Calculation Is Inadmissible Because It Is
          Irrelevant to The Jury's Determination Of Damages.................................... 7

          i.   Mr. Glowacki Has Not Calculated Any Legal Measure of Damages
               Recoverable Under New York Law....................................................... 8

          ii.  Mr. Glowacki's Reinstatement Calculation Is Irrelevant Because
               He Employed an Improper Hindsight Approach. ................................. 11

      C.  Mr. Glowacki's Reinstatement Calculation Is Also Unreliable.................. 14

          i.   Mr. Glowacki's Reinstatement Calculation Is Unreliable Because
               the Amount of Damages Is Not Tied to Any Alleged Breach But
               Instead to His Selection of the Policies............................................... 14

          ii.  Mr. Glowacki's Reinstatement Calculation Is Unreliable Because
               He Ignored the Impact of COI Rate Increases In Calculating the
               Back Premiums. ................................................................................... 15

III.  CONCLUSION AND PRAYER ...................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amorgianos v. National R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ........................................................................... 7

*Aroneck v. Atkin*,
    90 A.D.2d 966 (App.Div. 4th Dep't 1982) .................................................... 12

*Boyce v. Soundview Tech. Group, Inc.*,
    464 F.3d 376 (2d Cir. 2006) ......................................................................... 11

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ....................................................................................... 7

*Fleisher v. Phoenix Life Ins. Co.*,
    Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814
    (S.D.N.Y. Sep. 9, 2015) ............................................................................... 10

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ................................................. 7

*J.M. Rodriguez & Co. v. Moored-McCormack Lines, Inc.*,
    299 N.E.2d 243 (N.Y. 1973) ....................................................................... 11

*Kumho Tire Co., Ltd. v. Chemical*,
    526 U.S. 137 (1999) ....................................................................................... 7

*Lucente v. International Business Machines, Corp.*,
    310 F.3d 243 (2d Cir. 2002) ............................................................... 8, 11, 12

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008) ........................................................................... 7

*Merrill Lynch and Co. Inc. v. Allegheny Energy, Inc.*,
    500 F.3d 171 (2d Cir. 2007) ......................................................................... 12

*Moreno-Godoy v. Kartagener*,
    7. F.4th 78 (2d Cir. 2021) ......................................................................... 8, 11

*Oscar Gruss & Son, Inc. v. Hollander*,
    337 F.3d 186 (2d Cir. 2003) ......................................................................... 11

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125 (2d Cir. 2016) ...................................................................... 9, 10

*RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*,
   156 F. App'x 349 (2d Cir. 2005) ........................................................................ 8

*Sharma v. Skaarup Ship Mgmt. Corp.*,
   916 F.2d 820 (2d Cir. 1990) ......................................................................... 11, 12

*Simon v. Electrospace Corp.*,
   269 N.E.2d 21 (N.Y. 1971) ........................................................................... 11, 13

*U.S. West Fin. Serv., Inc. v. Marine Midland Realty Credit Corp.*,
   810 F. Supp. 1393 (S.D.N.Y. 1993) ................................................................... 12

*Wagner v. Hesston Corp.*,
   450 F.3d 756 (8th Cir. 2006) ............................................................................... 7

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
   946 F.2d 1003 (2d Cir. 1991) .............................................................................. 8

*Zwillinger v. Garfield Slope Hous. Corp.*,
   1998 WL 623589 (E.D.N.Y. Aug. 17, 1998) (internal citations omitted) ............... 7

**Rules**

FED. R. EVID. 702 ................................................................................................. 6

Defendant PHL Variable Insurance Company ("PHLVIC") hereby submits this Memorandum of Law in Support of its Motion to Exclude Kevin Glowacki and would show the Court the following:

## INTRODUCTION

Lite Trust I ("Lite") sued in 2017 alleging an interest in 53 universal life insurance policies that lapsed for nonpayment of premiums. Lite alleged PHLVIC breached the policies by sending late payment grace notices that overstated the amounts owed to keep the policies in force. Lite subsequently amended, adding a new claim that PHLVIC breached 22 of the 53 policies when it raised the cost of insurance ("COI") rates in 2011. Based on recent stipulations (ECF Nos. 83, 84), the only remaining claim is that PHLVIC breached 13 policies when it raised the COI rates.

Lite designated Kevin Glowacki, a CPA, as its expert to provide damages opinions related to the 13 policies. In the years after those policies lapsed for nonpayment of the premiums, 5 insureds died. Based on this hindsight information, Mr. Glowacki was instructed to assume a reinstatement and calculate the premiums that would have been required to keep each policy in force through the date of the insured's death or, for those still alive, December 10, 2021. He subtracted the estimated back premiums from the 5 death benefits and characterized the difference of $12,709,853 as Lite's damage. Mr. Glowacki's damage calculation is only admissible under Federal Rule of Evidence 702 if it is both relevant and reliable. For a number of reasons, his calculation is irrelevant and unreliable, and should be excluded.

Mr. Glowacki's damages analysis assigns no damages to 8 of the 13 policies because the insureds are still living. Those 8 policies should therefore no longer be at issue in the case. Even if Lite establishes that one of the other 5 policies was breached, the jury will have to determine the damages attributable to the breach of that particular policy. Mr. Glowacki cannot assist the jury in

that task because he has not calculated a damages number for any of the 5 policies where the insureds died. His $12,709,853 calculation is also no help to the jury because it intertwines the 13 policies like a single transaction, but they are not. They are an arbitrary grouping of 13 policies insuring 13 different lives that lapsed between February 2012 and October 2014, some lapsing while owned by a predecessor investor and others while owned by Lite. There is no basis in New York law for a measure of breach of contract damages based on arbitrarily grouping unrelated contracts and assuming a reinstatement of those contracts.

Mr. Glowacki's calculation is also not based on a legally recoverable measure of damages for breach of contract under New York law because the calculation turns on the deaths that occurred long after the policies lapsed. It is axiomatic that New York law prohibits hindsight damage calculations – precisely the type of a decade-long wait and see approach to damages employed by Mr. Glowacki in using deaths that occurred long after the alleged breach. Nor is Mr. Glowacki's damage calculation reliable. Mr. Glowacki inexplicably failed to consider certain policies that received the same rate increase as the 13 policies he considered. Using Mr. Glowacki's own hindsight methodology including these policies would mean millions less in damages. he excluded these policies to boost his damage number. Then in his calculation of premiums estimates, Mr. Glowacki admittedly relied on the wrong insurance rates, again artificially increasing his total damage calculation.

## I.    FACTUAL BACKGROUND

### A.  Lite Sued PHLVIC On 53 Lapsed Policies.

Lite's FAC, filed in August 2017, alleges that it owns a portfolio of 53 lapsed universal life insurance policies (the "Policies").[1] FAC ¶ 1. Most of the Policies were already lapsed when Lite

---

[1] Lite's First Amended Complaint (ECF No. 12) is cited herein as "FAC."

acquired its interests from prior investors in 2013, and the others lapsed before Lite filed suit. *Id.*

¶¶ 32-257. Premiums paid on a universal life insurance policy are applied to the accumulation

value (or account value) from which the monthly insurance charges are deducted. *Id.* ¶ 13. Lite

alleges that PHLVIC breached 22 Policies by improperly increasing their COI rates used to

determine the monthly insurance charges.[2] *Id.* ¶ 2. While Lite originally asserted claims on the

other Policies, based on party stipulations (ECF Nos. 83, 84), the only remaining claim is that

PHLVIC breached 13 policies when it raised the COI rates.

**B. Kevin Glowacki Issued a Damages Report On 15 Policies Based On an Assumed Reinstatement and No COI Rate Increases.**

On December 10, 2021, Lite submitted its Expert Report of Kevin M. Glowacki who

computed a single damage amount ($11,032,213) for 15 Policies.[3] Ex. A-1, Opening Report at

Schedule 1. Explaining why he only included 15 Policies in his report, Mr. Glowacki testified: "I

was asked to analyze and include in my analysis policies for which there was a COI increase. If

there was no COI increase, I excluded it." Ex. A-2, Tr. 86:6-14; *see also id.* 86:16-20 ("If there

was no COI increase, I'm not offering an opinion on damages, correct.").

Mr. Glowacki's analysis was based on an assumed reinstatement of the 15 Policies as of

December 10, 2021, the date of his report. Ex. A-1, Opening Report ¶ 20 ("if the 15 COI Policies

I identified as being subject to increased COI rates were reinstated today, the policy owner would

be entitled to...total damages of $11 million"). Five insureds died years after the Policies insuring

them lapsed, and Mr. Glowacki relied on the analysis of Northstar Life Services, LLC, to know

---

[2] Lite and PHLVIC entered a stipulation whereby Lite will dismiss its breach of contract and fraud claims related to the grace notices. Only the breach of contract claim on the 13 Policies identified in Mr. Glowacki's supplement report remains.

[3] Exhibits A1-A7 cited herein are attached to Exhibit A, the Declaration of Hutson Smelley, incorporated herein by reference.

which insureds died and when they died. *Id.* at 11 n. 10; Ex. A-2, Tr. 117:4-13. Based on the assumed reinstatement, Mr. Glowacki treated the 15 Policies as if they never lapsed and in addition were not subject to any COI rate increases. Ex. A-2, Tr. 105:2-10. His model estimated the premiums that would have been required to keep the Policies in force until the later of the insureds' deaths or December 10, 2021. *Id.*, Tr. 132:8-17.

The table below shows the hypothetical death benefits, assumed death dates, and estimated back premiums taken directly from Schedule 1 of Mr. Glowacki's report, together with the policy lapse dates[4]:

| Policy No. | Death Benefit | Lapse Date | Date of Death | Est. Premiums |
|---|---|---|---|---|
| 97528616 | | 9/2/12 | | $1,496,618 |
| 97526154 | | 10/20/12 | | $2,513,139 |
| 97527405 | $5,000,000 | 6/10/12 | 5/12/2019 | $919,743 |
| 97525720 | | 9/2/12 | | $688,123 |
| 97524935 | | 9/29/12 | | $1,320,490 |
| 97523969 | $5,000,000 | 2/20/13 | 9/7/2020 | $1,089,415 |
| 97525809 | | 10/20/14 | | $458,682 |
| 97527933 | $5,500,000 | 2/12/14 | 10/1/2020 | $1,090,271 |
| 97527347 | | 10/26/14 | | $1,095,554 |
| 97525645 | | 2/13/12 | | $1,864,277 |
| 97523864 | $2,000,000 | 11/23/13 | 10/17/2016 | $112,830 |
| 97525245 | | 11/16/13 | | $740,269 |
| 97526820 | | 11/30/13 | | $919,794 |
| 97522535 | | 4/17/13 | | $1,650,651 |
| 97526706 | $10,000,000 | 8/11/12 | 4/7/2015 | $507,930 |
| **TOTAL** | **$27,500,000** | | | **$16,467,787** |

Mr. Glowacki arrived at his aggregate $11,032,213 damages number by subtracting the hypothetical back premiums ($16,467,787) from the hypothetical death benefits ($27,500,000) shown in the table. Ex. A-1, Opening Report at Schedule 1. He did not calculate damages for any particular Policy. He also attributes no damages for the 8 Policies where the insureds are still alive.

---

[4] The lapse dates are taken from the Declaration of D. Grabber ¶ 3 attached as Exhibit B, based on data stored in PHVLIC's administrative system.

As Mr. Glowacki conceded, using Policy no. 97528616 as an example of those Policies where the insureds are still living, "[b]ecause Ms. Angelou is still alive, there are no damages associated with death benefits for this policy." *Id.* ¶ 41.

### C. Kevin Glowacki Issued a Supplemental Damages Report Redoing His Calculations To Include Only 13 Policies.

Lite subsequently served a supplemental report that completely re-did his calculations. Ex. A-2, Tr. 146:17-21 (replaces the prior calculation); Ex. A-3, Supp. Report. Mr. Glowacki decided that 2 of the 15 Policies included in his damages calculation in his first report ***were not*** subject to the 2011 COI rate increase. Ex. A-2, Tr. 145:22-146:13; Ex. A-3, Supp. Report Schedule 1. Because his original calculation was allegedly intended to include only those Policies that were subject to the 2011 COI rate increase, his supplemental calculation only considered 13 Policies. *Id.*, Tr. 115:20-116:6. Removing these 2 Policies from the analysis boosted the damage calculation by over $2 million, **meaning Lite claims the damage for 13 Policies is substantially higher than the damage amount for the same 13 Policies plus 2 more Policies**. He also adjusted his calculation for some errors he became aware of from PHLVIC's expert. *Id.*, Tr. 127:4-128:8. Although Mr. Glowacki became aware that his estimated premiums were incorrect because they did not account for the 2017 and 2021 COI rate increases that would have applied to the Policies had they not lapsed, he was not sure how to fix this error. *Id.*, Tr. 104:1-106:4, 106:9-107:5.

The table below shows revised premium calculations for the same 15 Policies as the table above, taken directly from Schedule 1 to Mr. Glowacki's supplemental report, again with the lapse dates:

| Policy No. | Death Benefit | Lapse Date | Date of Death | Est. Premiums |
|---|---|---|---|---|
| 97528616 | | 9/2/12 | | $1,523,184 |
| 97526154 | | 10/20/12 | | $2,576,622 |
| 97527405 | $5,000,000 | 6/10/12 | 5/12/2019 | $1,059,907 |
| 97525720 | | 9/2/12 | | $692,091 |

| | | | | |
|---|---|---|---|---|
| 97524935 | | 9/29/12 | | $1,341,520 |
| 97523969 | $5,000,000 | 2/20/13 | 9/7/2020 | $1,191,283 |
| 97525809 | | 10/20/14 | | $498,147 |
| 97527933 | $5,500,000 | 2/12/14 | 10/1/2020 | $1,199,569 |
| 97527347 | | 10/26/14 | | $1,130,902 |
| 97525645 | | 2/13/12 | | $1,879,387 |
| 97523864 | $2,000,000 | 11/23/13 | 10/17/2016 | $181,775 |
| 97525245 | | 11/16/13 | | $760,580 |
| 97526820 | | 11/30/13 | | $945,814 |
| 97522535 | | 4/17/13 | | $1,644,174 |
| 97526706 | $10,000,000 | 8/11/12 | 4/7/2015 | $501,457 |
| **TOTAL** | **$27,500,000** | | | **$17,126,412** |

Although Mr. Glowacki included estimated premiums for the same 15 Policies in his revised report, he then removed from his calculation Policy nos. 97525720 and 97522535, allegedly because they were not subject to the 2011 COI rate increases. Ex. A-3, Supp. Report Schedule 1. His revised damage calculation for the 15 Policies would have been $10,373,588, based on subtracting the hypothetical back premiums ($17,126,412) from the hypothetical death benefits ($27,500,000) shown in the revised table above. Removing Policy nos. 97525720 and 97522535 increased his calculation by $2,336,365, from $10,373,588 to $12,709,853. *Id.* In reality, Policy nos. 97525720 and 97522535 were unquestionably subject to the 2011 COI rate increases, as well as Policy no. 97523494 that he never considered. Ex. B, D. Grabber Decl. ¶ 4.

## II.     ARGUMENTS AND AUTHORITIES

### A.  Legal Standard.

Federal Rule of Evidence 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702. The Supreme Court has held that Rule 702 "imposes a special obligation upon the trial judge to 'ensure that any and all scientific

testimony… is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Chemical,* 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

The Rule "requires a valid… connection to the pertinent inquiry as a condition to admissibility" and "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). Expert opinion "based on data, a methodology, or studies that are simply inadequate to support the conclusions reached" must be excluded under Rule 702 as "unreliable opinion testimony." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). Likewise, expert opinions based on speculative assumptions or without a factual basis should be excluded. *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). The expert must explain how and why he reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 144 (1997); *Kumho Tire Co., Ltd.*, 526 U.S. at 152. "But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.*, 522 U.S. at 146.

Relevancy has been described as ensuring that the evidence "fits" the facts of the case. *Zwillinger v. Garfield Slope Hous. Corp.*, 1998 WL 623589, at *10 (E.D.N.Y. Aug. 17, 1998) (internal citations omitted). The party seeking to offer the expert testimony has the burden of establishing the reliability and relevance of the proposed testimony. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

**B. Mr. Glowacki's Reinstatement Calculation Is Inadmissible Because It Is Irrelevant to The Jury's Determination Of Damages.**

### i. Mr. Glowacki Has Not Calculated Any Legal Measure of Damages Recoverable Under New York Law.

In order to prevail on its claim, Lite "must prove: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.'" *Moreno-Godoy v. Kartagener*, 7. F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC*, 156 F. App'x 349, 350-51 (2d Cir. 2005)). "Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law." *Lucente v. International Business Machines, Corp.*, 310 F.3d 243, 261 (2d Cir. 2002) (quoting *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991)). Here, Mr. Glowacki's damage calculation will not assist the jury because (1) he attributed no damages to 8 of the 13 Policies and so those should be excluded from the case, (2) he did not provide Policy-specific calculations of the "damages attributable to the breach" for any particular Policy, and (3) there is no basis in New York law for a measure of breach of contract damages based on arbitrarily grouping unrelated contracts and assuming a reinstatement of those contracts.

The table shows the 13 Policies with the premium data from Mr. Glowacki's supplemental report. He added the death benefits for those that died (A) and subtracted the back premiums (B), which resulted in a net negative for 8 of the 13 Policies (C) as indicated in red.

| Policy No. | (A)<br>Death Benefit | (B)<br>Premiums Owed | (C)<br>Net (death benefit less premiums owed)<br>(A) − (B) = (C) |
|---|---|---|---|
| 97528616 | | $1,523,184 | ($1,523,184) |
| 97526154 | | $2,576,622 | ($2,576,622) |
| 97527405 | $5,000,000 | $1,059,907 | $3,940,093 |
| 97524935 | | $1,341,520 | ($1,341,520) |
| 97523969 | $5,000,000 | $1,191,283 | $3,808,717 |
| 97525809 | | $498,147 | ($498,147) |
| 97527933 | $5,500,000 | $1,199,569 | $4,300,431 |

| 97527347 | | $1,130,902 | ($1,130,902) |
|---|---|---|---|
| 97525645 | | $1,879,387 | ($1,879,387) |
| 97523864 | $2,000,000 | $181,775 | $1,818,225 |
| 97525245 | | $760,580 | ($760,580) |
| 97526820 | | $945,814 | ($945,814) |
| 97526706 | $10,000,000 | $501,457 | $9,498,543 |
| **TOTAL** | **$27,500,000** | **$14,790,147** | **$12,709,853** |

Aware that 8 Policies are net negatives in his analysis, Mr. Glowacki admitted that there are no damages associated with the Policies were the insureds are living.[5] Ex. A-1, Opening Report ¶ 41; Ex. A-2, Tr. 118:7-20 (including policies with living insureds reduces damages). But if there are no damages associated with those 8 Policies, then there can be no breach of contract recovery. *Process Am., Inc.*, 839 F.3d at 141. Those Policies should no longer be in the case.

Even for those 5 Policies where the insureds died, the positive numbers in column (C) do not represent damages attributable to the breach, but instead are just components in Mr. Glowacki's intertwined analysis of all 13 Policies. Mr. Glowacki grouped 13 Policies that insured 13 different lives and lapsed between February 2012 and October 2014 while owned by different investors, then treated them like one contract, for which he provided one damage number. He provided no Policy-specific damage calculations even for the 5 Policies where the insureds died. Assuming Lite establishes that the 2011 COI rate increase breached one of those Policies, the jury will be tasked with determining the damages (if any) "attributable to the breach" of that particular Policy. Mr. Glowacki's opinions will not assist the jury because he did not calculate damages for any individual Policy, and There is no basis under New York law for recovering legal damages based on a hypothetical reinstatement of a group of contracts instead of proving the existence of

---

and amount of damages on each individual contract. *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) ("Proof of damages is an essential element of a claim for breach of contract under New York law.").

In other COI cases the plaintiffs always seek as damages the additional insurance charges incurred as a result of the COI rate increase or the impact to the value of the investment. In fact, in the class action Lite opted out of, and then used to pattern its COI increase allegations, plaintiffs' expert calculated the alleged overcharges resulting from the disputed COI rate increases, and the approved settlement was based on recovering a portion of those overcharges. *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *4, 9 (S.D.N.Y. Sep. 9, 2015). But Mr. Glowacki did not do those calculations. Instead, knowing in hindsight which insureds are alive and which died, he grouped 13 Policies, added the death benefits for the 5 deceased insureds, and subtracted the back premiums. In an actual reinstatement, Lite would immediately owe millions of dollars in premiums before it could submit any claims to PHLVIC for death benefits.[6] Lite wants to recover death benefits without paying the back premiums, but there is nothing in New York law that permits this.

The jury will be tasked with separately determining the breach of contract damages for each Policy at issue. Because Mr. Glowacki did not calculate those amounts, and what he did calculate has no legal basis under New York law, he has no opinions that will assist the jury in determining damages. Mr. Glowacki's damages opinions and reinstatement calculation should be excluded.

---

[6] Mr. Glowacki's understated calculations put the back premiums at over $10 million. Ex. A-3, Supp. Report at Schedule 1.

### ii. Mr. Glowacki's Reinstatement Calculation Is Irrelevant Because He Employed an Improper Hindsight Approach.

Not only is Mr. Glowacki's reinstatement calculation without any affirmative legal basis under New York law, but New York law disallows breach of contract damages calculated as of a date long after the purported breach based on hindsight knowledge of events that transpired years after the breach.

"In New York, the general rule is that damages for breach of contract are computed at the time of breach."[7] *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (internal quotation marks omitted) (quoting *J.M. Rodriguez & Co. v. Moored-McCormack Lines, Inc.*, 299 N.E.2d 243, 244 (N.Y. 1973)). As such, "a party's breach and the loss caused [is] fixed and determined . . . [when] plaintiff's cause of action accrued." *Id.* at 86 (internal quotation marks omitted) (quoting *Simon v. Electrospace Corp.*, 269 N.E.2d 21, 26 (N.Y. 1971)). "The proper measure of damages for breach of contract is determined by the loss sustained or gain prevented at the time and place of breach." *Simon v. Electrospace*, 269 N.E.2d 21, 26 (N.Y. 1971). The damages calculation "should put the plaintiff in the same economic position he would have occupied had the breach party performed the contract." *Oscar Gruss & Son, Inc.*, 337 F.3d at 196.

Because "the loss caused by a breach is determined as of the time of breach," it is "fundamental that, where the breach involves the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages." *Sharma v.*

---

[7] *See also Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006) ("It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach."); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("New York courts are clear that breach of contract damages are measured from the date of breach."); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (same); *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) ("it is a fundamental proposition of contract law, including that of New York, that the loss caused by a breach is determined as of the time of breach.").

*Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990). Thus, changes in currency exchange rates, changes in the price of shares of stock, and changes in the value of real estate, after the breach, may not be considered. *Id.* New York law disallows "awards based on what 'the actual conditions and performance' were in light of hindsight." *Id.* at 826 (quoting *Aroneck v. Atkin*, 90 A.D.2d 966 (App.Div. 4th Dep't 1982)). Damages cannot be calculated as of the date of trial. *Id.* In short, New York law rejects the "'wait and see' theory of damages" that varies based events after the breach. *Id.*; *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) ("New York courts have rejected awards based on what the actual economic conditions and performance were in light of hindsight.").

These limitations apply to cases like this one where there is an alleged deprivation of contract rights. *U.S. West Fin. Serv., Inc. v. Marine Midland Realty Credit Corp.*, 810 F. Supp. 1393, 1397-99 (S.D.N.Y. 1993). In *Merrill Lynch and Co. Inc. v. Allegheny Energy, Inc.*, the defendant purchased a business (GEM) from Merrill Lynch and counterclaimed for breach of certain warranty provisions in the sale agreement. 500 F.3d 171, 176-77 (2d Cir. 2007). The Second Circuit noted the "well established principle that contract damages are measured at the time of the breach," and held that the "district court's inquiry into GEM's performance and market conditions in the months following the acquisition was improper because events subsequent to the breach, viewed in hindsight, may neither offset nor enhance Allegheny's general damages." *Id.* at 185. Because Merrill Lynch breached certain warranties the proper measure of damages was "the difference between the value of GEM as warranted and its value as delivered." *Id.*

Likewise, in *Sharma v. Skaarup Ship Manag. Corp.*, the plaintiffs sought redress for— among other claims—a series of alleged contractual breaches. 916 F.2d 820, 823 (2d Cir. 1990). For their damages, the plaintiffs sought "not the market value of the vessels on the date of the

various breaches, approximately $15 million, but the profits that would have been earned in future years . . . [which] amount [to] $80 million." *Id.* Rejecting this hindsight approach, the court observed that "[i]t is [] fundamental that, where the breach involved the deprivation of an item with a determinable market value, the market value **at the time of the breach** is the measure of damages." *Id.* at 825 (emphasis added) (citing *Simon*, 269 N.E.2d at 233). Thus the court limited the plaintiffs' damages to the $15 million accrued at the time of the breach. *Id.*

Lite alleges that "the prior policyholders … suffered damages, including but not limited to **the loss of each policy** and the death benefits to which LITE otherwise would be entitled now or in the future, the loss of those additional funds paid or otherwise lost to PHL following its COI increase, and the **loss in the value of their policies in the market** as a result of PHL's COI increase, as well as all premiums previously paid to PHL and consequential damages and interest." FAC ¶ 281 (emphasis added). Lite designated actuary Raymond Goldblatt as an expert, and he contends that the COI rate increases "destroy[ed] the value of the asset [policyholders] had purchased and maintained for years." Ex. A-4, Goldblatt Report ¶ 38; *see also id.* ¶ 46 (PHLVIC "destroyed the value of the policies"); *Id.* ¶ 55 (Lite harmed by "decrease in the value of the policies as an asset"). Although Mr. Goldblatt has "valued thousands of life insurance policies in the secondary and tertiary markets" (*id.* ¶ 5), he did not disclose any opinions on a loss of market value for the Policies at the time of the alleged breaches. Mr. Glowacki also has experience valuing life insurance policies, but he was not asked to do any valuations either. Ex. A-2, Tr. 88:1-90:9.

Mr. Glowacki's testimony about how an investor calculates expected future profitability for a life insurance policy illustrates why the approach he followed in this case, at counsel's direction, is disallowed under New York law. *Id.* Tr. 37:4-8 (explaining he has experience pricing policies for acquisition). According to Mr. Glowacki, the investor would project future premiums

by weighting them against the probability the insured's survival to that future point, and then also weight the future death benefit by the probability it will be collected at that future point. *Id.* 37:20-38:14. The expected profitability is the difference between those future weighted amounts discounted to a present value. *Id.* 39:15-22. But critical for this Motion, Mr. Glowacki testified that there is no guaranty the expected profitability will be realized. *Id.* 41:9-14. The reason is that life insurance policies, like all investments, have risks, and the "primary risk is that the insured lives longer than you expect them to." *Id.* 42:15-23.

Although Mr. Glowacki testified from his experience that the life settlement investor does not know when the insured will die, he employed precisely the sort of wait-and-see approach New York law prohibits. He knows looking back exactly when the insureds died and used that information for his calculation even though it was unknown at the time of the alleged breach. Had he been tasked with doing a damages analysis after the last of the 13 Policies lapsed but before any insureds died, he would never have put forward the damages analysis he is now advocating because he would not know who would die or when. This shows that his calculation has nothing to do with measuring the economic impact of the allegedly improper 2011 COI rate increase at the time those rate increases were implemented. Indeed, the entire premise of Mr. Glowacki's calculation is that Lite was harmed by the subsequent loss of death benefits years after the alleged breaches. His hindsight damage opinions are not permitted under New York law and should be excluded as irrelevant to the damages questions the jury will have to answer.

### C. Mr. Glowacki's Reinstatement Calculation Is Also Unreliable.

#### i. Mr. Glowacki's Reinstatement Calculation Is Unreliable Because the Amount of Damages Is Not Tied to Any Alleged Breach But Instead to His Selection of the Policies.

PHLVIC contends that Mr. Glowacki's selection of the 13 Policies was guided solely by deriving a large positive damage number and including some Policies as placeholders hoping the

insureds die before trial. Lite's alleged instructions to Mr. Glowacki were to include those policies that incurred a COI increase. Ex. A-2, Tr. 86:6-14, 86:16-20. But at least 3 of the 22 Policies listed in Lite's FAC were omitted from Mr. Glowacki's calculation even though they incurred the 2011 COI rate increase. Ex. B, D. Grabber Decl. ¶ 4. Specifically, he omitted policy nos. 97525720, 97522535, and 97523494. These 3 Policies all received notices that COI rate increases would be implemented on the policy anniversary following November 1, 2011. Exs. A-5 – A-7, H. Smelley Decl. ¶¶ 12 – 14. These Policies did not lapse until after their anniversaries and therefore incurred COI rate increases. Ex. B, D. Grabber Decl. ¶ 4. Two of these policies were part of the original 15 Policies Mr. Glowacki considered, and they account for approximately $2.3 million in premiums according to his calculations. Ex. A-3, Supp. Report Schedule 1. The third omitted Policy, according to PHLVIC's calculations, accounts for another approximately $2.3 million in premiums. Ex. B, D. Grabber Decl. ¶ 4. In other words, Mr. Glowacki's choice to exclude these 3 Policies – for which the insureds are still living – increased his damages calculation by over $5 million. *See* Ex. A-2, Tr. 118:7-17 ("Under the methodology that I employed if an insured was still alive, it would have reduced the damages as of today, yes.").

This demonstrates the unreliability of Mr. Glowacki's process of picking winners and excluding losers after the fact in order to gin up a larger damages number. Any damages methodology where the answer swings up or down by millions of dollars based on arbitrary choices and hindsight knowledge is inherently unreliable. For this additional reason, his reinstatement calculation should be excluded.

### ii. Mr. Glowacki's Reinstatement Calculation Is Unreliable Because He Ignored the Impact of COI Rate Increases In Calculating the Back Premiums.

As already shown above, New York law disallows hindsight damages like the approach Mr. Glowacki applied. But even if the Court allowed his hindsight approach, his calculation is

unreliable. Mr. Glowacki was never told by Lite's counsel that the Policies would have been subject to further COI rate increases in 2017 and 2021 had they not lapsed years earlier. Because Mr. Glowacki's hindsight calculation estimated premiums for 8 Policies through the end of 2021 without accounting for the later 2017 and 2021 COI rate increases, his calculations are overstated and unreliable and for this additional reason should be excluded.

Mr. Glowacki elected to estimate the COI rates in place before the 2011 COI rate increase rather than using the actual rates in PHLVIC's rate tables. Ex. A-2, Tr. 83:5-17, 12:12-17. And because he was unaware that the Policies were subject to additional COI rate increases in 2017 and 2021, he did not account for those increases. *Id.,* Tr. at 103:18-24. Mr. Glowacki conceded that "I don't know….how they got from the two thousand – the new tables that were issued in 2011 to the tables that were issued in 2017." *Id.*, Tr. at 102:11-23. He acknowledged that Lite is only suing for the 2011 COI rate increase. *Id.*, Tr. at 103:2-17. But when pressed that any damages model estimating premiums through the end of 2021 would have to account for the 2017 and 2021 COI rate increases, he responded: "I mean, I think I would have to think about that and I'd have to understand better how those rate increases were determined and how they impacted things. I don't think I could answer that sitting here today." *Id.*, Tr. at 104:1-12. When asked how his calculations could possibly be accurate, he could only say that "I think my calculations are accurate assuming the pre-2011 rates remain in place." *Id.*, Tr. at 104:16-105:10. He was not able to explain how he would have done his analysis differently if he had known about the 2017 and 2021 COI rate increases. *Id.*, Tr. at 105:11-21. He could not even explain what information he would need to determine the impact on his analysis of the 2017 and 2021 COI rate increase. *Id.*, Tr. at 105:23-106:4.

Given Lite's strategy of trying to collect based on hindsight knowledge of Policies that all lapsed by 2014, it was incumbent on Mr. Glowacki to be aware of the applicable COI rates thru 2021, including any COI rate increases that occurred after Lite's Policies lapsed. Mr. Glowacki should not be allowed to rely on any hindsight knowledge, but if he were permitted to do so, he cannot choose favorable facts for his calculation and ignore others. For this additional reason, Mr. Glowacki's premium estimates and damage calculation should be excluded.

### III. CONCLUSION AND PRAYER

WHEREFORE, PHLVIC respectfully requests that this Court grant its Motion, exclude Mr. Glowacki from offering any testimony on estimated premium payments or damages, and for such other and reasonable relief as to which this Court may find PHLVIC to be entitled.

Dated: August 1, 2022

Respectfully submitted,

By: */s/ Hutson B. Smelley*
Thomas F.A. Hetherington*
tom.hetherington@mhllp.com
Jarrett E. Ganer*
jarrett.ganer@mhllp.com
Hutson B. Smelley*
hutson.smelley@mhllp.com
Steven M. Correa*
steven.correa@mhllp.com

McDOWELL & HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone:     (713) 337-5580
Facsimile:     (713) 337-8850

*admitted *pro hac vice*

*Attorneys for Defendant PHL Variable Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing document to be sent by electronic mail to counsel of record on August 1, 2022.

*/s/Hutson B. Smelley*
Hutson B. Smelley
