IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAAC JAKOBOVITS, as Trustee of the LITE TRUST I, | Civil Action No. 17-cv-3527-ARR-RER |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE KEVIN GLOWACKI** |
| v. | |
| PHL VARIABLE INSURANCE COMPANY, | <u>ECF CASE</u> |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

I.     ARGUMENTS AND AUTHORITIES ................................................................................. 1

    A.    Lite's Opposition Incorrectly Asserts that PHLVIC's Arguments Go to the Weight of Testimony Rather than Admissibility. ..................................................... 1

    B.    Lite's Opposition Fails To Show That Mr. Glowacki's Damages Calculation Is Not an Impermissible Hindsight Calculation. ....................................................... 2

    C.    Lite's Opposition Fails To Show That Mr. Glowacki's Damages Calculation Will Assist the Jury In Determining Damages On a Policy-By-Policy Basis. ............... 5

        i.    Mr. Glowacki Attributed No Damages To 8 Policies. ................................ 5

        ii.    Mr. Glowacki Failed To Provide Policy Specific Damage Amounts. ......... 6

        iii.    There Is No Basis Under New York Law For Mr. Glowacki's Calculation. ................................................................................................... 8

    D.    Lite's Opposition Concedes That Mr. Glowacki's Damages Calculation Is Inaccurate. ................................................................................................... 9

II.    CONCLUSION AND PRAYER ...................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyce v. Soundview Tech. Group, Inc.*,
   464 F.3d 376 (2d Cir. 2006)......................................................................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).....................................................................................................................4

*Kumho Tire Co., Ltd. v. Chemical*,
   526 U.S. 137 (1999).....................................................................................................................4

*Wagner v. Hesston Corp.*,
   450 F.3d 756 (8th Cir. 2006) .......................................................................................................8

Defendant PHL Variable Insurance Company ("PHLVIC") hereby submits this Reply in Support of its Motion to Exclude Kevin Glowacki and would show the Court the following:

**INTRODUCTION**

In response to PHLVIC's Motion to Exclude Kevin Glowacki, Lite Trust I ("Lite") fails to address the central arguments. PHLVIC's Motion contends that Mr. Glowacki's damages calculation is unreliable because it is based on hindsight information not available at the time of the alleged breach, does not provide any policy-specific damages amounts, and does not calculate a measure of damages provided for under New York law. In its Opposition, Lite argues around these issues but never explains why Mr. Glowacki should be permitted to rely on his hindsight knowledge of when the insureds died, never tells the Court what the damages are for any specific Policy, and cites no case law permitting Mr. Glowacki's damages calculation. PHLVIC also argued that his damages calculation is unreliable because it used the wrong COI rates, a point Lite does not dispute but asks that it be permitted to fix with a supplement.

**I.     ARGUMENTS AND AUTHORITIES**

**A. Lite's Opposition Incorrectly Asserts that PHLVIC's Arguments Go to the Weight of Testimony Rather than Admissibility.**

In its Opposition, Lite repeatedly asserts that PHLVIC's arguments go to the weight to be given Glowacki's opinions, not to their admissibility. Opp. at 7, 8, 10, 11, 13, 14, 15. But this is not true. PHLVIC's arguments that Mr. Glowacki's damages calculation used facts learned only after the alleged breaches is not permitted under New York law, failed to provide any policy-specific damage numbers, lack of any legal support for the measure of damages he calculated, and knowingly used the wrong COI rates, are squarely within the Court's gatekeeper role of ensuring that an expert's testimony is relevant and reliable such that it will assist the jury in its role as fact finder. *Kumho Tire Co., Ltd. v. Chemical,* 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). As demonstrated in PHLVIC's opening brief and as further articulated below, Mr. Glowacki's opinions do not satisfy this standard and should be excluded.

### B. Lite's Opposition Fails To Show That Mr. Glowacki's Damages Calculation Is Not an Impermissible Hindsight Calculation.

PHLVIC argued in its opening brief that "New York law disallows breach of contract damages calculated as of a date long after the purported breach based on hindsight knowledge of events that transpired years after the breach." Mot. at 11. PHLVIC pointed out that Mr. Glowacki relied on his hindsight knowledge of "exactly when the insureds died and used that information for his calculation even though it was unknown at the time of the alleged breach." *Id.* 14. Lite's Opposition offers red herrings but ultimately fails to address PHLVIC's argument because Mr. Glowacki unquestionably relied on information learned years after the 2011 COI rate increases.

Knowing the precise dates the insureds died was critical to Mr. Glowacki's damages calculation. For example, his opening report included several paragraphs focused on Policy number 97523969 that insured Faith Everest for $5 million, received a COI rate increase notice in October 2011, and lapsed in February 2013. Ex. A-1, Opening Report ¶¶ 30-34;[1] Ex. B, D. Grabber Decl. ¶ 3.[2] Explaining his analysis, Mr. Glowacki wrote, "I understand that Ms. Everest passed away on September 7, 2020, and I have therefore included in Plaintiff's damages the death benefit of $5 million" but "offset that amount…by the premiums that Plaintiff's [sic] would have had to pay from the date at which the Account Value was insufficient to cover COI charges until the date of Ms. Everest's death." *Id.* ¶ 34. No one could have known at the time of the 2011 COI rate

---

[1] A copy of Glowacki's Opening report is attached as Exhibit A-1 to PHLVIC's Motion to Exclude Kevin Glowacki.

[2] A copy of D. Grabber's Declaration is attached as Exhibit B to PHLVIC's Motion to Exclude Kevin Glowacki.

increases that Ms. Everest would die over 8 years later on September 7, 2020. Yet Mr. Glowacki's entire damages calculation turns on knowing precisely the dates Ms. Everest and 4 other insureds died, as well as knowing the other insureds lived through 2021. The use of that information makes Mr. Glowacki's damages calculation the result of an impermissible hindsight approach.

Lite's Opposition does not even attempt to explain how at the time of the 2011 COI rate increases the precise dates 5 insureds would die could be known, or how it could be known that 8 others would live to the end of 2021. Obviously that information was unknown, which is why Mr. Glowacki testified that for life settlement investors the "primary risk is that the insured lives longer than you expect them to." Ex. A-2, Tr. 41:19-42:2.[3] Ignoring Mr. Glowacki's use of the death dates to do his calculation, Lite insists Mr. Glowacki's calculation is not the result of hindsight analysis because if it were, "he surely could have done a much better job" selecting the policies to include in his calculation. Opp. at 12. Lite reasons that Mr. Glowacki could have only included "policies on which a death benefit is due." *Id.* This response misses the point. The question raised by PHLVIC's argument is not why Mr. Glowacki selected the 13 Policies he analyzed, but whether his calculation was performed in reliance on information he could only have learned years after the disputed 2011 COI rate increases. Even if Mr. Glowacki had only focused on the 5 policies where the insureds died, he would still have had to rely on their precise dates of death that he could only know in hindsight after the deaths occurred.

Allowing a jury to simply assess the weight of Mr. Glowacki's testimony as Lite argues is entirely inappropriate because it is the Court and not the jury that must determine whether Mr. Glowacki's methodology is legally wrong and contrary to New York law. "It is settled Second

---

[3] A copy of Glowacki's Deposition Transcript is attached as Exhibit A-2 to PHLVIC's Motion to Exclude Kevin Glowacki.

Circuit law that in a breach of contract case, damages are calculated at the time of the breach." *Boyce v. Soundview Tech. Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006). Lite also argues that PHLVIC's cited case law disallowing hindsight damages calculations are distinguishable because the "changes in factors" at issue in those cases are not the same factors at issue here. Opp. at 12. But that is of no consequence. The principle of those cases is well established and that none of them involved life settlements is neither here nor there.

Lite further argues that Mr. Glowacki's calculation is proper because it is designed to put Lite in the position it would have occupied absent the 2011 COI rate increases. Opp. at 12. Lite explains that "Glowacki's analysis shows both the payments that Lite would have had to make to PHL, as well as the payments Lite would have received, had the insurance policies in question not been breached." *Id.* But this argument just confirms the problem with Mr. Glowacki's analysis. He only knows "the payments that Lite would have to make" because he relied on his knowledge of when Ms. Everest and the others died.

Finally, Lite argues that in contrast to the calculation he performed, Mr. Glowacki "could have performed an analysis of the value of the policies that had not matured." Opp. at 13. Lite explains that such valuations were not done because Lite is seeking reinstatement of the policies where the insureds are still living. *Id.* But Lite provides no explanation why this has anything to do with whether Mr. Glowacki's damages calculation improperly relies on knowledge of events that occurred after the alleged breaches and that he could only have learned in hindsight, like Ms. Everest's September 7, 2020 death.

Critically, Lite offers no explanation of why Mr. Glowacki did not or could not perform "an analysis of the value of the policies" that measured the "value" as of the date of the alleged breach. While PHLVIC does not concede that such value would be legally recoverable as damages

4

for the alleged breach, life settlement investors, including Lite's predecessors, routinely assess the "value" of an in-force life insurance policy by estimating how long a particular insured is expected to live based on an assessment of the insured's mortality risks. The expected cash flows—premiums and death benefits—are then discounted to present value based on this forward-looking analysis.

Lite has the burden of showing Mr. Glowacki's damages calculation is relevant and reliable. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). Lite's Opposition fails to refute that Mr. Glowacki relied on information about which insureds died and when they died, which deaths all occurred long after the 2011 COI rate increases. For this reason, Mr. Glowacki's damages opinions must be excluded.

**C. Lite's Opposition Fails To Show That Mr. Glowacki's Damages Calculation Will Assist the Jury In Determining Damages On a Policy-By-Policy Basis.**

PHLVIC argued in its opening brief that Mr. Glowacki's damage calculation will not assist the jury because (1) he attributed no damages to 8 of the 13 policies, (2) did not provide policy-specific damages amounts, and (3) there is no basis in New York law for the calculation he did based on an assumed reinstatement. Mot. at 8.

**i. Mr. Glowacki Attributed No Damages To 8 Policies.**

Lite's Opposition to the argument that Mr. Glowacki attributed no damages to the 8 policies where the insureds are living is that it is seeking reinstatement of those policies, not damages. Opp. at 10. This is news to PHLVIC based on the pleading in the complaint and expert report. In fact, Mr. Glowacki wrote twice in his opening report that he calculated a "total damages of $11 million" on 15 Policies, which his rebuttal report reduced to 13 Policies. Ex. A-1, Opening Report ¶¶ 20, 50. Regardless, this further undermines the reliability of his opinions. Mr. Glowacki assumed in his reports that the Policies never lapsed in 2012-2014, then looking back from the vantage point

5

of December 2021, he added death benefits and subtracted premiums.

This hindsight rests on the fiction that the death benefits could be used to pay the premiums. In the real world, Lite would have had to timely fund all 13 Policies or they would lapse. The first death did not occur until April 2015. There is no evidence in the record showing Lite could have paid the premiums required until that death, or in fact would have done so. Mr. Glowacki provides no reason why this assumption (that premiums would be paid) which underlies his methodology is economically sound. This is the precise reason that damages are assessed at the time of breach to ensure reliability. That his opening report assumed funding of 15 Policies, then he supplemented and assumed funding of 13 Policies but not the other 2 Policies, underscores that his entire analysis rests on a changing historical fiction and is unreliable.

### ii. Mr. Glowacki Failed To Provide Policy Specific Damage Amounts.

Even if Lite is not seeking damages on 8 policies, Lite must still prove an amount of damages for each of the other 5 Policies, a point Lite does not dispute. One would have expected Lite's Opposition to make quick work of PHLVIC's argument—if it could—by telling the Court the specific amount of damages Mr. Glowacki calculated for the Everest Policy and the other 4 Policies where the insureds died. Lite has not done that because those calculations do not exist. There is nowhere in any of Mr. Glowacki's reports or his testimony where he provided policy-specific damages numbers, and for that reason his damages opinions will not assist the jury and must be excluded.

Notwithstanding, Lite cites the 15 schedules to Mr. Glowacki's opening report claiming that is where the Court can find the policy-specific damages. Opp. at 10 (citing "Sch. 1-A through 1-O"). Those 15 schedules only calculate the back-premiums, not damages. For example, Mr. Glowacki explained for the Everest Policy that he subtracted from the $5 million death benefit the back premiums of $1,089,415 computed in his Schedule 1-F. Ex. A-1, Opening Report ¶ 34. The

back premiums that would be owed to PHLVIC if the Everest Policy had not lapsed are clearly not his calculation of Lite's damages for the Everest Policy, and nothing in his report or Schedule 1-F states a damages number for the Everest Policy. The same is true for the other Policies.

Lite next takes the surprising position that while the "narrative of Glowacki's Reports speaks of the total of all the policies," the Court can find his policy-specific damages in the table on pages 8 and 9 of **PHLVIC's brief.** Opp. at 10. This argument concedes that Mr. Glowacki's reports and testimony do not provide policy-specific damages numbers. Notably, Mr. Glowacki has not provided a supplemental opinion, or even a declaration, affirming that the table in PHLVIC's brief represents his new policy-specific damages opinions, and PHLVIC contends he would never do so. That is because the numbers PHLVIC calculated in its brief are unquestionably not Mr. Glowacki's policy-specific damages numbers. For the Court's convenience the table is re-created below:

| Policy No. | (A) Death Benefit | (B) Premiums Owed | (C) Net (death benefit less premiums owed) (A) – (B) = (C) |
|---|---|---|---|
| 97528616 | | $1,523,184 | ($1,523,184) |
| 97526154 | | $2,576,622 | ($2,576,622) |
| 97527405 | $5,000,000 | $1,059,907 | $3,940,093 |
| 97524935 | | $1,341,520 | ($1,341,520) |
| 97523969 | $5,000,000 | $1,191,283 | $3,808,717 |
| 97525809 | | $498,147 | ($498,147) |
| 97527933 | $5,500,000 | $1,199,569 | $4,300,431 |
| 97527347 | | $1,130,902 | ($1,130,902) |
| 97525645 | | $1,879,387 | ($1,879,387) |
| 97523864 | $2,000,000 | $181,775 | $1,818,225 |
| 97525245 | | $760,580 | ($760,580) |
| 97526820 | | $945,814 | ($945,814) |
| 97526706 | $10,000,000 | $501,457 | $9,498,543 |
| **TOTAL** | **$27,500,000** | **$14,790,147** | **$12,709,853** |

What Lite now claims, **without evidence**, to be Mr. Glowacki's policy-specific damages

7

numbers are those shown in column (C) above. For example, for the Everest Policy (number 97523969), PHLVIC subtracted Mr. Glowacki's back premiums of $1,191,283 from the $5,000,000 death benefit to get a net of $3,808,717. This ***cannot possibly*** be Mr. Glowacki's damages number for the Everest Policy because the $3,808,717 does not include any netting out of back premiums for the 8 policies where the insureds are living, which Mr. Glowacki included in his analysis of the 13 policies collectively. Mr. Glowacki's analysis provides only an aggregate total "damage" for 13 Policies that nets back premiums for all of the policies.

Mr. Glowacki's failure to provide policy-specific damages numbers for the 5 Policies for which Lite is seeking monetary damages renders his aggregate damages calculation for the 13 Policies unhelpful to the jury and irrelevant to their task of determining damages for each separate Policy. For these reasons and those shown in PHLVIC's opening brief, Mr. Glowacki's damages opinions should be excluded.

### iii. There Is No Basis Under New York Law For Mr. Glowacki's Calculation.

In response to PHLVIC's argument that "there is no basis under New York law for a measure of breach of contract damages based on arbitrarily grouping unrelated contracts and assuming a reinstatement of those contracts" (Mot. at 8), Lite's Opposition cites no New York case permitting this measure of recovery. There is none and so Lite again retreats to red herrings.

Lite attempts to address this deficiency by arguing that Mr. Glowacki "did not aggregate or group the policies in question…[but] as shown in PHL's Motion, Glowacki provided his calculations for each, individual policy." Opp. at 11. As PHL explained, *supra* at pages 7-8, the table in PHLVIC's brief is not ***Mr. Glowacki's*** policy-specific damage calculations and cannot be found in his report. But regardless, the contents of PHLVIC's table in its brief have nothing to do with the argument that Lite has no basis in New York law for the aggregate approach to damages Mr. Glowacki calculated. Insofar as Lite's Opposition fails to cite any authority, the Court may

presume Lite has none.

Lite next argues that "Glowacki did not arbitrarily pick the policies on which he calculated damages" but instead selected those with COI rate increases. *Id.* This dodges the issue by focusing on whether his selection of 13 Policies is correctly characterized as arbitrary. Regardless of that, Lite has the burden of showing the Court that there is a basis in New York law for what Mr. Glowacki did. Ex. A-1, Opening Report ¶ 19 ("Counsel has asked me to…assum[e] that any COI Policies for which PHL either wrongly increased the COI rates or requested premiums in excess of what was allowed under the insurance policy should never have lapsed and would have remained in force until the earlier of 1) the insured's date of death or 2) the date of my report."). Lite points to no legal basis for Mr. Glowacki's calculation, and it makes no sense that the damages at the time of the breach of any one of the Policies would have anything to do with the other Policies such that an intertwined analysis of 13 Policies is required.

Lite's Opposition fails to meet Lite's burden of pointing the Court to authority for the calculation Mr. Glowacki did. His opinions should be excluded.

**D. Lite's Opposition Concedes That Mr. Glowacki's Damages Calculation Is Inaccurate.**

Lite argued in its opening brief that, given the hindsight nature of Mr. Glowacki's analysis—which PHLVIC contests are improper—he did not account for the 2017 and 2021 COI rate increases that would have impacted his back-premium calculations making them unreliable. Ex. A-2, Tr. 104:16-105:10 ("So I think my calculations are accurate assuming the pre-2011 rates remain in place."). Lite concedes that Mr. Glowacki used the wrong rates, but argues he can fix it in a supplemental report.

This is troubling for a couple of reasons. First, as Lite explained in its Opposition, Mr. Glowacki already supplemented his report because of an error brought to his attention by PHLVIC's expert Mr. Sandberg's rebuttal report. Opp. at 3. Mr. Sandberg's rebuttal report also

pointed out that Mr. Glowacki failed to account for the 2017 and 2021 COI rate increases. *See* Ex. D ¶ 13 to Lite's Motion to Exclude.[4] Lite offers no explanation for why Mr. Glowacki did not address this in his supplemental report, nor argument that he could not do so, but having failed to do so prior to his deposition he should not be permitted to do so now. Second, Lite provides no evidence that he can fix his errors. In his deposition he was unsure how to fix it. Ex. A-2, Tr. 101:12-102:23, 104:1-12.

Lite also argues that this issue of "the additional rate increases go merely to the final number" and "does not affect his methodology." Opp. at 15. But this goes directly to Mr. Glowacki's methodology. He filed a supplemental report that re-did all of his calculations after reviewing Mr. Sandberg's criticisms. Aware of the 2017 and 2021 rate increases, he proceeded with a methodology that included certain information known only in hindsight (e.g., when insureds died) but ignored the COI rate increases.

For these additional reasons and those in PHLVIC's opening brief, Mr. Glowacki's analysis is unreliable and should be excluded.

## II. CONCLUSION AND PRAYER

WHEREFORE, PHLVIC respectfully requests that this Court grant its Motion, exclude Mr. Glowacki from offering any testimony on estimated premium payments or damages, and for such other and reasonable relief as to which this Court may find PHLVIC to be entitled.

Dated: August 22, 2022

Respectfully submitted,

By: */s/ Hutson B. Smelley*
Thomas F.A. Hetherington*
tom.hetherington@mhllp.com
Jarrett E. Ganer*
jarrett.ganer@mhllp.com

---

[4] A copy of David Sandberg's Opening Report is attached as Exhibit D to Lite's Motion to Exclude Testimony to David Sandberg and Timothy Pfeifer.

10

Hutson B. Smelley*
hutson.smelley@mhllp.com
Steven M. Correa*
steven.correa@mhllp.com

McDowell & Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

*admitted *pro hac vice*

*Attorneys for Defendant PHL Variable Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing document to be sent by electronic mail via the ECF system to counsel of record on August 22, 2022.

*/s/Hutson B. Smelley*
Hutson B. Smelley
