# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISAAC JAKOBOVITS, as Trustee of the LITE TRUST I, | Civil Action No. 17-cv-3527-ARR-RER |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE RAYMOND GOLDBLATT** |
| v. | |
| PHL VARIABLE INSURANCE COMPANY, | ECF CASE |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

I. ARGUMENTS AND AUTHORITIES.......................................................................... 1

    A. Lite's Opposition Incorrectly Asserts that PHLVIC's Arguments Go to the Weight of Testimony Rather than Admissibility. ..................................................... 1

    B. Lite's Opposition Fails To Show That Mr. Goldblatt's Report Was Timely. ......... 2

    C. Lite's Opposition Fails To Show That Mr. Goldblatt's Report Complied With Rule 26 By Identifying the Documents He Considered................................. 3

    D. Lite Opposition Fails to Show That Mr. Goldblatt Is Qualified To Provide Opinions About COI Increases. ................................................................................ 5

    E. Lite's Opposition Fails to Show That Mr. Goldblatt's Core Opinion About Discrimination Within a Class Of Insureds Is Relevant and Reliable. .................... 7

    F. Lite's Opposition Fails to Show that Mr. Goldblatt Has Any Basis For His Opinion That The 2011 COI Rate Increase Improperly Recouped Prior Losses........................................................................................................................ 9

    G. Lite Opposition Fails to Show That Mr. Goldblatt's Opinion That PHLVIC Should Have Considered Alternatives To The 2011 COI Rate Increase is Relevant and Reliable. ......................................................................... 11

II. CONCLUSION AND PRAYER ............................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*,
    171 F.R.D. 57 (S.D.N.Y. 1997) ..................................................................................... 3

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..................................................................................................... 2

*Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*,
    No. 05-cv-80, 2007 WL 1560277 (N.D. Ohio May 29, 2007) .................................... 4

*Fleisher v. Phoenix Life Ins. Co.*,
    18 F. Supp. 3d 456 (S.D.N.Y. 2014) ............................................................... 2, 6, 7, 8

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ..................................................................................................... 9

*Kumho Tire Co., Ltd. v. Chemical*,
    526 U.S. 137 (1999) ..................................................................................................... 2

*Malletier v. Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) .......................................................................... 6

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litig.*,
    293 F.R.D. 568 (S.D.N.Y. 2013) ................................................................................. 4

*In re Mirena IUD Products Liability Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016) .......................................................................... 4

*Schwab v. Philip Morris USA, Inc.*,
    No. 04-cv-1945 (JBW), 2006 WL 721368 (E.D.N.Y. Mar. 20, 2006) ........................ 4

**Statutes**

N.Y. Ins. Law § 4224(a)(1) ................................................................................................. 7

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................................ 3, 4

Fed. R. Civ. P. 26(a)(2) ....................................................................................................... 4

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................................. 3, 5

Fed. R. Civ. P. 37(c)(1) ....................................................................................................... 4

Fed. R. Civ. P. 26(a)(2)(B)(ii)..................................................................................................4

Fed. R. Evid. 702(a)..................................................................................................................6

Defendant PHL Variable Insurance Company ("PHLVIC") hereby submits this Reply in Support of its Motion to Exclude Raymond Goldblatt and would show the Court the following:

**INTRODUCTION**

In response to PHLVIC's Motion to Exclude Raymond Goldblatt, Lite Trust I ("Lite") fails to address the central arguments. In addition to showing that his report was untimely and deficient, PHLVIC's Motion contends that Mr. Goldblatt is wholly unqualified to speak to the central question of whether the 2011 COI rate increase was actuarially justified as he has neither reviewed PHLVIC's underlaying actuarial analysis nor by his own admission does he understand the applicable accepted actuarial principles. PHLVIC further showed that his opinions that the 2011 COI rate increase improperly discriminated, recouped prior losses, or that PHLVIC failed to consider alternatives to the increase are neither relevant nor reliable.

In its Opposition, Lite argues around these issues but fails to show how Mr. Goldblatt is qualified to speak to actuarial standards he could not explain in his deposition. Lite's Opposition fails to show how Mr. Goldblatt's opinions on discrimination are relevant when he is unable to tie those opinions to any accepted actuarial standards, and instead concedes PHLVIC did not violate such standards. Lite fails to explain how Mr. Goldblatt's opinion that the rate increase recouped prior losses is reliable when he did no actuarial analysis to make such a determination. Finally, Lite concedes that Mr. Goldblatt's purported alternatives to the 2011 COI rate increase may not be alternatives at all because Mr. Goldblatt does not know if any alternative would have alleviated the need for the 2011 COI rate increase.

I. **ARGUMENTS AND AUTHORITIES**

A. **Lite's Opposition Incorrectly Asserts that PHLVIC's Arguments Go to the Weight of Testimony Rather than Admissibility.**

In its Opposition, Lite repeatedly asserts that PHLVIC's arguments go to the weight to be

given Mr. Goldblatt's opinions, not to their admissibility. *See e.g.,* Opp. at 5-7, 10-11. But this is not true. PHLVIC's arguments that Mr. Goldblatt is not qualified, that his opinions are neither supported by actuarial analysis or actuarial standards, and that his opinions are irrelevant, are squarely within the Court's gatekeeper role of ensuring that an expert's testimony is relevant and reliable such that it will assist the jury in its role as fact finder. *Kumho Tire Co., Ltd. v. Chemical,* 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). As demonstrated in PHLVIC's opening brief and as further articulated below, Mr. Goldblatt's opinions do not satisfy this standard and should be excluded.

**B. Lite's Opposition Fails To Show That Mr. Goldblatt's Report Was Timely.**

As the plaintiff, Lite unquestionably has the burden of proof to show that the 2011 COI rate increases unfairly discriminated among a class of insureds. As Judge McMahon held concerning the 2011 COI rate increases at issue here, the rate increases would "not be deemed 'unfair' as long as it can be justified under accepted actuarial principles." *Fleisher v. Phoenix Life Ins. Co.*, 18 F. Supp. 3d 456, 480 (S.D.N.Y. 2014). Lite was required by December 10, 2021 to designate an actuarial expert to speak to whether the 2011 COI rate increases was justified under accepted actuarial principles and chose not to do so. Lite's Opposition offers no basis for Mr. Goldblatt being permitted to provide non-rebuttal opinions.

Lite's Opposition argues that because PHLVIC timely designated an actuary who opines that the 2011 COI rate increases were justified under accepted actuarial principles, its expert may as "rebuttal" offer affirmative liability opinions that were required to be disclosed in opening expert reports. Opp. at 16-17. Elevating form over substance, Lite reasons that Mr. Goldblatt's opinions are rebuttal because he repeatedly refers to PHLVIC's expert in his report. By so arguing, Lite concedes that if PHLVIC's actuarial expert does not testify, neither can Mr. Goldblatt, in which case it will be unable to present any evidence of liability. In any event, both

sides had the same deadline for opening reports and Lite failed to meet it. The apparent reason for that, as shown in PHLVIC's opening report and further in this Reply, is that Mr. Goldblatt is simply not qualified to address whether the 2011 COI rate increases were justified under accepted actuarial principles. That is why he offers only conclusory opinions characterized as rebuttal and performed no analysis of the actuarial documents underlaying the 2011 COI rate increase.

Lite's expert should be precluded from offering the affirmative opinions listed in PHLIC's opening brief and any affirmative opinions that the 2011 COI rate increases recouped prior losses or failed to comply with actuarial standards.

**C. Lite's Opposition Fails To Show That Mr. Goldblatt's Report Complied With Rule 26 By Identifying the Documents He Considered.**

In PHLVIC's opening brief, it demonstrated from Mr. Goldblatt's testimony under oath that he was provided "whole databank," "did a considerable dive into the databank produced from [counsel]," "read a lot of reports," "read a lot of data," "read a myriad of things," and formed his knowledge "from reading all those things about the individual policies and everything else." Mot. at 10-11. Rule 26(a)(2)(B) requires disclosure the documents "considered." Lite's Opposition dodges the issue by arguing that Mr. Goldblatt only reviewed these documents for "general background" but "did not rely on them in forming his rebuttal opinions." Opp. at 19. That is contrary to Mr. Goldblatt's testimony and applicable law.

Lite cites *B.C.F. Oil Refining* for the proposition that Rule 26 does not require listing documents reviewed as "background information," but nothing in that case says anything about excepting "background information" for drafting a report from what is required to be disclosed under Rule 26. *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.*, 171 F.R.D. 57, 61 (S.D.N.Y. 1997) (holding that documents "not directly related to the production of

an expert report" did not have to be produced). On the contrary, the advisory notes to Rule 26 and numerous cases reject Lite's argument that "considered" means "relied." *See* Fed. R. Civ. P. 26(a)(2) advisory committee's note ("litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure"); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litig.*, 293 F.R.D. 568 (S.D.N.Y. 2013) (it is "irrelevant whether the expert ultimately relies upon the facts or data in forming her expert opinions; instead, the test is whether the expert '**considered**' the materials"); *Schwab v. Philip Morris USA, Inc.*, No. 04-cv-1945 (JBW), 2006 WL 721368, at *2 (E.D.N.Y. Mar. 20, 2006) ("requirement of disclosure applies not only to information actually **relied** upon…but also to information that was not **relied** upon, but **considered** by the expert").

The meaning of "considered" is broad and easily encompasses the documents Mr. Goldblatt testified he reviewed in connection with drafting his report. "[T]he courts have embraced an objective test that defines '**considered**' [in Rule 26(a)(2)(B)(ii)] as anything received, **reviewed**, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed." *In re Mirena IUD Products Liability Litig.*, 169 F. Supp. 3d 396, 470 (S.D.N.Y. 2016) (quoting *Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 05-cv-80, 2007 WL 1560277, at *4 (N.D. Ohio May 29, 2007)). Mr. Goldblatt's opinions formed after considering voluminous undisclosed documents must be excluded unless the failure was "substantially justified or …harmless." *Id.* (quoting Rule 37(c)(1)). Lite contends that "PHL examined Mr. Goldblatt for approximately 6 hours on the various documents identified in his Report, and could have cross-examined him on any other document they felt to be relevant." Opp. at 19. But Mr. Goldblatt identified no documents in his

4

report other than PHLVIC's expert reports, and he repeatedly was unable to point to documents supporting his opinions even though his report states numerous affirmative opinions on liability.

For these reasons and those in PHLVIC's opening report, Mr. Goldblatt's opinions should be excluded because his report is not compliant with Rule 26(a)(2)(B).

**D. Lite Opposition Fails to Show That Mr. Goldblatt Is Qualified To Provide Opinions About COI Increases.**

Instead of trying to demonstrate that Mr. Goldblatt is qualified to speak to whether the 2011 COI rate increases were justified under accepted actuarial principles, Lite urges the straw man that "PHL's attacks can be summarized with one complaint: Goldblatt does not work for an insurance company." Opp. at 8. PHLVIC never made that argument, nor would it since its own actuarial expert, Mr. Pfeifer, worked for the last 35 years as a consulting actuary, not an insurance company employee. Ex. B-2, Pfeifer Tr. 8:6-25.[1] PHLVIC demonstrated in its opening brief not only that Mr. Goldblatt has zero experience working on any facet of COI rate increases, but that in his testimony he was wholly ignorant of the accepted actuarial principles such as ASOP 2 and could not even identify what series of policies are at issue or which rate increase is at issue. Mot. at 11-14.

Mr. Goldblatt agreed that ASOP 2 provides industry guidance to actuaries re-determining COI rates, but he read ASOP 2 for the first time after his engagement in this case. Ex. B-1, Tr. 77:7-78:14, 78:25-79:4.[2] In fact, he never reviewed any of the ASOPs before being engaged in this case because he never did anything that required him to consult the ASOPs. *Id.* 78:5-18. Based on his complete lack of experience with the ASOPs, Mr. Goldblatt could not even begin to

---

[1] A copy of Timothy Pfeifer's Deposition Transcript is attached as Exhibit B-2 to PHLVIC's Response to Lite's Motion to Exclude Certain Testimony from David Sandberg and Timothy Pfeifer.

[2] A copy of Raymond Goldblatt's Deposition Transcript is attached as Exhibit B-1 to PHLVIC's Motion to Exclude Raymond Goldblatt.

5

explain at a high level the guidance there for doing COI rate adjustments or for determining appropriate classes of insureds for doing COI rate adjustments:

> I would have to go through – sit with it open on one of my screens and go through it at that level. I don't have a working basic – knowing exactly what each phrase means, but I would have it open and go through each item as we go through it. It's basically guidelines on how to do it. It's not a specific do it this way. It's guidelines on what you can do.
>
> I think they do. I would have to look at it. I think they do define the classes, for example, by gender, smokers, nonsmokers. But I could not – I could not say without opening it and having a look.

*Id.* 79:5-24. Because Mr. Goldblatt has no experience or knowledge on the issues he intends to testify about, his opinions should be excluded. *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 642 (S.D.N.Y. 2007) (stating "an expert qualified in one subject matter does not thereby become an expert for all purposes" and citing example of heart surgeon not able to provide opinions on spine surgery).

Lite's Opposition focuses on how flexible the standard is for qualifying experts, but ignores there is still a standard—that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The issue before the Court is whether Mr. Goldblatt's experience and knowledge qualify him to address whether the 2011 COI rate increases were justified under accepted actuarial principles. He admits having no experience with pricing policies or doing any aspect of rate increases, and as quoted above, disavowed any working understanding of ASOP 2. Ex. B-1, Tr. 77:7-78:14, 78:25-79:16.

In the face of these problems, Lite attempts to concoct a scenario in which Mr. Goldblatt might be qualified to testify based an alleged holding in *Fleisher* that does not exist. According to Lite, the court in *Fleisher*, in considering "whether COI rate increases were allowed by the policies at issue," held that "the language disallowing unfair discrimination within a class is

ambiguous." Opp. at 9. Lite proposes that if this Court "were to make a similar ruling about the policy language at issue, then the opinion of someone, such as Goldblatt, who has experience interpreting life insurance policies as an investor or policy holder…would be highly valuable to the jury." *Id.*

The portion of *Fleisher* cited in Lite's Opposition had nothing to do with unfair discrimination. Rather, that portion of the court's opinion addressed whether the phrase "based on" in the COI provision was meant to illustrate or limit the factors that PHLVIC could consider when determining its COI rate adjustments. *See Fleisher*, 18 F. Supp. 3d at 470 ("Though I personally find Fleischer's proposed definition to be the more natural reading of 'based on,' the policy is ambiguous in that both readings are plausible."). Conversely, the court explained that whether the COI increase constituted "unfair discrimination" depends on whether the COI increase complied with applicable statutory requirements and actuarial standards. *Id.*, at 479 ("the policy does nothing to elucidate the meaning of 'discriminate unfairly within any class of insureds' . . . the interpretation of this provisions should track the statutory definition [of N.Y. Ins. Law § 4224(a)(1)] of what constitutes 'unfair discrimination:'" and holding that discrimination is fair if it "is appropriate under generally accepted actuarial standards").

Mr. Goldblatt can offer nothing to the jury by way of determining whether there is unfair discrimination. The issue is whether he can assist the jury with understanding accepted actuarial principles he himself does not understand. Mr. Goldblatt is not qualified to testify in this case, not because he never worked for an insurance company, but because he has no experience or knowledge about the accepted actuarial principles that apply to COI rate adjustments. His opinions should be excluded.

### E. Lite's Opposition Fails to Show That Mr. Goldblatt's Core Opinion About Discrimination Within a Class Of Insureds Is Relevant and Reliable.

Lite's Opposition again dodges the issues PHLVIC raised about Mr. Goldblatt's opinions. Lite argues that the "case will most likely turn on whether the COI rate increases violated the policy language prohibiting unfair discrimination between members of the same class" (Opp. at 13), but never addresses that unfair discrimination turns on whether the 2011 COI rate increases were "justified under accepted actuarial principles." *Fleisher*, 18 F. Supp. 3d at 480. The issue before the Court is whether Mr. Goldblatt's opinions are relevant and reliable on this issue, and Lite's Opposition does not demonstrate that they are.

PHLVIC pointed out in its opening brief that Mr. Goldblatt will say PHLVIC discriminated, and standing alone that means nothing because insurance by its nature discriminates in pricing based on actuarial principles. Mot. at 17-18. PHLVIC also pointed out that Mr. Goldblatt will not speak to whether the COI rate increases discriminated unfairly, offered several different versions of what a "class" of insureds means in this context, and critically, he will not say PHLVIC violated any actuarial principles. Mot. at 18-21. In response to this, Lite argues based on *Fleisher* that the meaning of "class" is ambiguous and will be a factual dispute for the jury to decide. Even if that is correct, Lite fails to explain how Mr. Goldblatt offering several different definitions of "class" (e.g., one PAUL series, all PAUL series, all company UL policies) will help the jury, especially where he admits ASOP 2 speaks to establishing classes for COI rate adjustments but he never considered whether his opinions on class are consistent with ASOP 2. Ex. B-1, Tr. 79:17-24; 122:3-18. Lite fails to explain how Mr. Goldblatt's opinions on class are reliable when he admitted he had no authority he could point to in the ASOPs or anywhere else as a basis for his opinion. *Id.* 145:7-15.

Ultimately, Mr. Goldblatt testified that all of PHLVIC's PAUL series policies had to get the same rate increase, or none at all. *Id.* 143:18-144:15; *see also id.* 144:16-145:6 ("I do not like

discrimination of any sort" and so the increase must be on everyone or no one). But PHLVIC issued at least 10 different PAUL series (e.g., PAUL IIb, PAUL IIIc, PAUL IVa) over the years with each series subject to different pricing. Ex. A, D. Grabber Decl. ¶ 3.[3] Mr. Goldblatt conceded ASOP 2 does not support his opinion and could not point to any other basis for his opinion. Ex. B-1, Tr. 155:11-23; *see also id*. 157:4-9 (asked whether ASOP requires the class to include everyone in the policy series, he responded: "No. That's why it's a guideline."). This is not merely a "**purported weakness in an expert's methodology or conclusion [that] goes to the degree of credibility**" as Lite contends (Opp. at 12), but a textbook example of an expert whose opinion on class is a moving target based on nothing but his *ipse dixit* and is admittedly unsupported by the controlling industry guidance in ASOP 2. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (court not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

The jury will not be assisted by Mr. Goldblatt testifying PHLVIC discriminated but not having any opinions on whether the COI rate increase was based on sound actuarial principles or whether the class the rate increase applied to was permitted by ASOP 2. Accordingly, as shown here in in PHLVIC's opening brief, Mr. Goldblatt's opinions about discrimination should be excluded for the reason that they are irrelevant, unsupported and unreliable.

   F. **Lite's Opposition Fails to Show that Mr. Goldblatt Has Any Basis For His Opinion That The 2011 COI Rate Increase Improperly Recouped Prior Losses.**

In its opening brief, PHLVIC challenged Mr. Goldblatt's opinion that the "circumstances of the rate change and **the creation from whole cloth of a new 'class' of policies** that the rate change would discriminate against provides reasonable grounds to **assume that the rate change was intended to target life settlement investors and cause them to allow policies to lapse**

---

[3] A copy of Duane Grabber's Declaration is attached as Exhibit A to PHLVIC's Motion to Exclude Raymond Goldblatt.

**recouping PHOENIX's losses** at the expense of policyholders." Ex. B-2, Goldblatt Report ¶ 21 (emphasis added).[4] Addressing in its opening brief the alleged creation of a new class, PHLVIC presented evidence that the classes used in the 2011 COI rate increases were established at pricing *and* that Mr. Goldblatt never reviewed any of the original pricing documentation and so has no basis for his opinion. Mot. at 23-24; Ex. B-1, Tr. 43:17-21. Addressing the allegation that PHLVIC recouped prior losses, PHLVIC did not challenge Mr. Goldblatt's definition of recouping prior losses, but argued he did no analysis to show that PHLVIC recouped prior losses. *Id.* at 24; Ex. B-1, Tr. 178:18-179:22. As throughout Lite's response, it addresses arguments PHLVIC did not make and ignores the arguments that were made.

Lite's Opposition ignores PHLVIC's challenge to Mr. Goldblatt's "creation from whole cloth of a new class" opinion. Mr. Goldblatt could not support it with evidence because he never reviewed the pricing documents to see what the classes were when the policies issued. His unsupported opinion should be excluded.

Lite's Opposition argues that "[w]hile PHL may disagree with Goldblatt's definition, it is clear that he has a basis for his opinion." Opp. at 13. But PHLVIC's Motion did not challenge his definition of recouping prior losses. PHLVIC challenged Mr. Goldblatt for opining that PHLVIC actually recouped prior losses even though he did no actuarial analysis applying his own definition. Ex. B-1, Tr. 178:18-179:22. Under his definition, he needed to compare the projected profitability after the 2011 COI rate increases to the anticipated profitability in the original pricing documents, but he never did that. *Id.* He therefore had no basis for his opinion that PHLVIC actually recouped prior losses and Lite's Opposition did not even attempt to show he had a basis for his opinion.

---

[4] A copy of Raymond Goldblatt's Report is attached as Exhibit B-2 to PHLVIC's Motion to Exclude Raymond Goldblatt.

For these reasons and those in PHLVIC's opening brief, Mr. Goldblatt's completely unsupported opinions that PHLVIC created new classes and recouped prior losses should be excluded.

**G. Lite Opposition Fails to Show That Mr. Goldblatt's Opinion That PHLVIC Should Have Considered Alternatives To The 2011 COI Rate Increase is Relevant and Reliable.**

PHLVIC argued in its opening brief that Mr. Goldblatt's purported alternatives to the 2011 COI rate increase are irrelevant to whether the rate increase was actuarially justified and his alternatives are completely unsupported by any actuarial analysis to show that they actually are rate increase alternatives. Mot. at 24-26. Lite's Opposition does not dispute that Mr. Goldblatt's opinions have no actuarial basis and instead only offers more conjecture.

Lite argues that Mr. Goldblatt's opinions are relevant "[e]ven if the alternatives Goldblatt suggested would not have 'alleviated the need for the 2001 [sic] COI rate increase." Opp. at 14. But if they would not have alleviated the need for the disputed rate increase, then they are not alternatives at all and will only prove confusing to the jury.

Adding more conjecture to Mr. Goldblatt's speculative alternatives, Lite's Opposition states: "Considering such alternatives **may** have changed PHL [sic] desired course of action or **may** have changed the amount of the COI rate increase, even if the increase was not completely eliminated." *Id.* (emphasis added). But the "may" is pure guesswork and Lite provides no explanation for how any of Mr. Goldblatt's alternatives "may" have had any impact on the 2011 COI rate increase. Lite and its expert do not have the faintest idea of the significance of Mr. Goldblatt's purported alternatives because he never did any number crunching.

Under these circumstances, his opinions are not credible or relevant and would only confuse the jury. For these reasons and those in its opening brief, Mr. Goldblatt should not be permitted to provide opinions on any alternatives to the 2011 COI rate increase.

## II. CONCLUSION AND PRAYER

WHEREFORE, for all the reasons stated herein and in its opening brief, PHLVIC respectfully requests that this Court grant its Motion, exclude Mr. Goldblatt from offering any testimony, and for such other and reasonable relief as to which this Court may find PHLVIC to be entitled.

Dated: August 22, 2022

Respectfully submitted,

By: */s/ Hutson B. Smelley*
Thomas F.A. Hetherington*
tom.hetherington@mhllp.com
Jarrett E. Ganer*
jarrett.ganer@mhllp.com
Hutson B. Smelley*
hutson.smelley@mhllp.com
Steven M. Correa*
steven.correa@mhllp.com

MCDOWELL & HETHERINGTON LLP
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone: (713) 337-5580
Facsimile: (713) 337-8850

*admitted *pro hac vice*

*Attorneys for Defendant PHL Variable Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing document to be sent by electronic mail via the ECF system to counsel of record on August 22, 2022.

*/s/Hutson B. Smelley*
Hutson B. Smelley